[No. 13008.    Department Two. — June 30, 1891.]
# JOHN H. REDINGTON, APPELLANT, v. GEORGE N. CORNWELL, RESPONDENT.

CORPORATIONS — PAYMENT OF DEBTS BY STOCKHOLDER — CONTRIBUTION — SUBROGATION TO RIGHTS OF CREDITOR. — A stockholder of a corporation who pays his own and another stockholder's proportionate share of the debts of the corporation, under a legitimate and fair effort to protect his own interest in the corporate property, is entitled to contribution from the other stockholder to the extent of such stockholder's proportion of the debt paid, and to be subrogated to the rights and remedies of the creditor as a necessary means to enforce such contribution.

ID. — VOLUNTARY PAYMENT. — Such a payment is not voluntary within the meaning of the rule denying the right of subrogation in cases of voluntary payments.

ID. — NATURE OF SUBROGATION — WHEN ALLOWED. — Subrogation is the substitution of another person in the place of a creditor, the substituted party succeeding to the rights of the creditor in relation to the debt. It is treated as the creature of equity, and is so administered as to secure real and essential justice without regard to form, and is independent of any contractual relations between the parties to be affected by it, and includes every instance in which one party for his own protection pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter.

ID. — ACTION FOR CONTRIBUTION BY STOCKHOLDER — PLEADING — PAYMENT OF INDEBTEDNESS — EXTINGUISHMENT OF DEBT. — Where the complaint in an action of contribution to recover a stockholder's proportionate share of a corporate debt paid by the plaintiff, after sufficiently alleging the payment of the whole indebtedness by the plaintiff, adds as a conclusion from those facts, "that thereby all of the indebtedness of said corporation then subsisting" to the creditor, and all claims and demands of the creditor, "were fully paid and extinguished," but does not allege that the debt of the defendant or of the other stockholders was "thereby extinguished," it is not liable to the objections that the allegations show that the debt of the corporation and of the stockholders was extinguished.

ID. — STATUTE OF LIMITATIONS — RIGHTS AND REMEDIES OF SUBROGATED STOCKHOLDER, WHEN BARRED — PROMISSORY NOTES. — The rights and remedies of a subrogated stockholder are barred by the statute of limitations within three years after the accruing of the liability; and the fact that the subrogation is to a promissory note of the corporation paid by the subrogated stockholder will not extend the statute, the note adding nothing to the remedy of the creditors to whom it was given as against the stockholder, so far as the statutes of limitations are concerned.

PLEADINGS — AMENDMENT OF COMPLAINT — SUPERSEDING OF ORIGINAL COMPLAINT — DEMURRER — STATUTE OF LIMITATIONS — CHANGING OF CAUSE OF ACTION. — An original complaint is not superseded by an amended

XC. CAL.—4

complaint for all purposes, but the original complaint may be considered as a part of the record of the case for the purpose of showing when the action was commenced, and whether or not a new or different cause of action was introduced by the amendment upon the hearing of a demurrer raising those questions.

ID. — BILL OF EXCEPTIONS — ORDER SUSTAINING DEMURRER — INCORPORATION OF ORIGINAL COMPLAINT. — Where a demurrer to an amended complaint is sustained and the original complaint is necessary to explain the exception to the order sustaining the demurrer, the appellant is entitled to incorporate the original complaint in his bill of exceptions to the order.

ID. — "TRIAL" OF ISSUE OF LAW. — The word "trial," as used in section 650 of the Code of Civil Procedure, means a trial of an issue of law as well as of an issue of fact, and under such section a bill of exceptions is allowable upon the trial of an issue of law.

ID. — CHANGE OF CAUSE OF ACTION — ASSIGNMENT OF NOTES IN SUIT — FACTS SHOWING EQUITABLE ASSIGNMENT AND SUBROGATION — AMENDMENT OMITTING LEGAL ASSIGNMENT. — Where the original complaint is upon two promissory notes, and alleges an assignment of the notes by indorsement and delivery, and also states facts from which an equitable assignment and subrogation would result in the absence of a legal assignment, and the amended complaint contains the same allegations with the exception of the legal assignment by indorsement, no new cause of action is stated.

APPEAL from a judgment of the Superior Court of Napa County.

The facts are stated in the opinion of the court.

*Olney, Chickering & Thomas,* for Appellant.

The plaintiff was the president and a trustee of the corporation, and as such trustee he was not a volunteer in paying the debt, but only performed a duty which, though the courts could not require it of him, yet having performed it, they will compel the beneficiary to reimburse him. (Civ. Code, secs. 2263, 2273; Perry on Trusts, secs. 485, 486, 907; *Troup's Case,* 29 Beav. 353; *Santa Cruz R. R. Co.* v. *Spreckles,* 65 Cal. 199.) When the plaintiff, not as a volunteer, paid the debt, by operation of law he became subrogated to the rights of the creditor as against the defendant, and the method by which the plaintiff became the owner of the debt does

not affect the cause of action.   ( *Waldrip* v. *Black*, 74 Cal. 412; *Lidderdale* v. *Robinson*, 2 Brock. 159; see *Carr* v. *Caldwell*, 10 Cal. 386; 70 Am. Dec. 740; *Robinson* v. *Leavitt*, 7 N. H. 73.)

*F. F. Johnston*, for Respondent.

Neither the first nor second amended complaint constitute a part of the judgment roll.   The amended pleading supersedes the original, and the latter has no longer any office to perform.   (*Barber* v. *Reynolds*, 33 Cal. 497; *Kelly* v. *McKibben*, 54 Cal. 192; *Kentfield* v. *Hayes*, 57 Cal. 409; *Thompson* v. *Johnson*, 60 Cal. 292.)   The liability of stockholders is fixed by statute, by the terms of which each stockholder of a corporation is liable for his proportion of the corporate debts contracted while he was a stockholder, as a principal debtor, and not as a surety. (1 Hittell's Gen. Laws, sec. 947; *Hyman* v. *Coleman*, 82 Cal. 653; 16 Am. St. Rep. 178; *Mokelumne Hill C. Co.* v. *Woodbury*, 14 Cal. 265; *Neilson* v. *Crawford*, 52 Cal. 248; *Sonoma Valley Bank* v. *Hill*, 59 Cal. 107; *Morrow* v. *Superior Court*, 64 Cal. 383.)   The liability commences and a right of action accrues against the corporation and stockholders at the same time.   (*Davidson* v. *Rankin*, 34 Cal. 503; *Mitchell* v. *Beckman*, 64 Cal 117.)   Suspension of the remedy against the corporation does not suspend the remedy against or affect the liability of the stockholders. (*Young* v. *Rosenbaum*, 39 Cal. 646.)   A judgment against the corporation does not create a new liability nor extend the time prescribed by the statute of limitations for bringing suit against the stockholders.   (*Larrabee* v. *Baldwin*, 35 Cal. 168; *Stilphen* v. *Ware*, 45 Cal. 110.) The liability of stockholders is created by a statute, and an action to enforce that liability must be brought within three years after the cause of action accrues. (*Green* v. *Beckman*, 59 Cal. 545; *Moore* v. *Boyd*, 74 Cal. 167.)   The renewal of a promissory note by the corporation does not extend the time prescribed by statute for

suing a stockholder. (*Hyman* v. *Coleman*, 82 Cal. 653; 16 Am. St. Rep. 178.) The complaint in this case does not show any liability of the corporation to the plaintiff. The case made is that of a president of the board of trustees of a corporation voluntarily paying the debt of the corporation. The position which the plaintiff held, that of a trustee, forbids his dealing with himself. (Civ. Code, secs. 2263, 2273.) The act of plaintiff was purely voluntary, and created no liability to him on the part of the corporation or on that of the stockholders. (1 Parsons on Contracts, 5th ed., 469; 1 Parsons on Bills and Notes, 319.) A creditor who is also a stockholder of a corporation, and as such liable for its debts, is not entitled to the remedies afforded by statute to creditors against stockholders for the debts of the corporation. (*Thompson* v. *Bemis Paper Co.*, 127 Mass. 598; *Gray* v. *Coffin*, 9 Cush. 206; *Bailey* v. *Bancker*, 3 Hill, 189; 38 Am. Dec. 625; *Thompson* v. *Meisser*, 5 Am. & Eng. Corp. Cases, 47.) Each cause of action stated in the complaint is barred by the statute of limitation. When a complaint is amended so as to state a new cause of action, the action is not commenced as to the new cause until the amended complaint is filed. (*Anderson* v. *Mayers*, 50 Cal. 525; *Atkinson* v. *A. & S. Canal Co.*, 53 Cal. 102; *Meeks* v. *S. P. R. R. Co.*, 61 Cal. 149; *Lawrence* v. *Ballou*, 50 Cal. 258; *Jeffers* v. *Cook*, 58 Cal. 147; *Henderson* v. *Grammar*, 66 Cal. 332.)

VANCLIEF, C. — This appeal is from a final judgment in favor of the defendant, rendered on demurrer to plaintiff's *third* amended complaint in two counts, and presents for decision the general question, Should the demurrer have been sustained?

The facts alleged in the first count of the complaint are substantially as follows: —

During a period of time embracing all the transactions alleged, the plaintiff and defendant were stock-

holders and directors of the Redington Quicksilver Company, a California corporation, and the plaintiff was president of the board of directors. During the same period the subscribed capital stock of the corporation consisted of 1,260 shares, of which the defendant owned 461 shares. From September 1, 1879, until June 1, 1882, the corporation had "a mutual, open, and current account" with Redington & Co., a copartnership. At divers times during that period the copartnership received from the corporation consignments of quicksilver, which it sold and disposed of for the corporation, and collected the proceeds thereof, advanced and loaned money to the corporation, and paid out money for its use, and also received partial payments from the corporation on the account. In this account the corporation was debited with all moneys loaned and advanced to it, and with all sums paid out and expended for its use by the copartnership, and was credited with all proceeds of sales of quicksilver, and with all payments made on the account.

On June 1, 1882, the copartnership and the corporation had an accounting, by which it was found that there was a balance of $64,126.24 due from the latter to the former, for which the corporation then made its promissory note, of which the following is a copy:—

"$64,126.24.           SAN FRANCISCO, June 1, 1882.

"On demand, for value received, the Redington Quicksilver Company hereby promises to pay to Mess. Redington & Company, or order, at its office in San Francisco, sixty-four thousand one hundred and twenty-six 24-100 dollars, with interest thereon at the rate of eight (8) per cent per annum until paid. Interest payable monthly, and if not so paid, to become a part of the principal, and bear a like interest.

[Signed]   "THE REDINGTON QUICKSILVER COMPANY.
                "JOHN H. REDINGTON, President.
[Corp. Seal.]      "GEORGE PENLINGTON, Secretary."

After formally alleging the above facts, the complaint proceeds as follows:—

"6. That thereafter, to wit, on or about the seventh day of June, 1882, said firm of Redington & Co. pressed for and demanded of the said corporation the collection and payment of the balance of the indebtedness aforesaid and of said promissory note; that at the time of said demand said corporation was wholly without funds wherewith to pay the same; that thereupon, to wit, on or about the said last-named day, at said city and county of San Francisco, this plaintiff, in good faith, and for the honor, use, and benefit of the said 'The Redington Quicksilver Co.,' advanced and paid the said sum of $64,126.24 to said firm of Redington & Co., in full satisfaction and discharge of the said balance, and of the said indebtedness evidenced by the said promissory note; that thereby all of the indebtedness of said corporation then subsisting to said Redington & Co., and all claims and demands of said firm upon said corporate note, were fully paid and extinguished; that said Redington & Co. thereupon surrendered and delivered said promissory note to this plaintiff;

"7. That no payments have been made by said corporation, or on its behalf, or at all, upon said account, or the said balance thereof, or upon said indebtedness evidenced by said promissory note, or upon or on account of said sum so advanced by said plaintiff, except the sum of $24,126.24, which was repaid to plaintiff thereon on or about the thirty-first day of May, 1884, and that on said thirty-first day of May, 1884, there remained and was, and that there now is, due and wholly unpaid from said 'The Redington Quicksilver Co.' to this plaintiff of the said balance and of the said indebtedness, and of said sum advanced by plaintiff as aforesaid, the sum of $40,000, with interest thereon from said last-named day, together with interest upon the sum of $24,126.24 from the seventh day of June, 1882, up to said thirty-first day of May, 1884;

"8.  That at all the times and dates aforesaid the said defendant was one of the directors of the said ' The Redington Quicksilver Co.'; that as such director he acted for said corporation in and about the execution of said promissory note, and also in incurring the indebtedness evidenced thereby, and in making the payments that have been made on account of the same as aforesaid; that said defendant, as such director, and also individually, had at all the times and dates aforesaid full notice and knowledge of the facts hereinabove alleged, and of each and every one thereof; that he has at all the times, and with notice and knowledge, as aforesaid, acquiesced in, confirmed, and ratified all and singular the acts of said corporation, and of said firm of Redington & Co., and of this plaintiff, hereinabove mentioned and averred;

" 10.  That by reason of the premises defendant is, and at all the times since the said thirty-first day of May, 1884, has been, liable and holden to plaintiff for $\frac{461}{1260}$ of the said sum of $40,000, and of the interest remaining due to plaintiff from said corporation as aforesaid, to wit, the sum of $14,635, together with interest thereon from the said thirty-first day of May, 1884, at the legal rate, together with $\frac{461}{1260}$ of the interest at the legal rate upon the said sum of $24,126.24 from the seventh day of June, 1882, to the thirty-first day of May, 1884;

" 11.  That though frequently requested so to do, the said defendant has hitherto wholly failed, neglected, and refused to pay to plaintiff the said last-mentioned sum or the said interest, or any part thereof;

" 12.  That upon receiving from defendant payment of his proportionate part of the balance and indebtedness aforesaid due from said corporation to this plaintiff, and of the moneys so as aforesaid advanced and paid by plaintiff, and of said interest, this plaintiff is ready and willing, and now here and hereby offers to discharge and

satisfy to the extent of such payment the said obligation of the said corporation, or of its stockholders to this plaintiff, and otherwise to abide by and perform the judgment of this court touching the same."

The second count is upon another promissory note of the corporation to the same copartnership firm for the sum of $14,800.43, dated December 31, 1883, for a balance of the account running to the date of this second note. In all other respects the second count is like the first.

The grounds of the demurrer are,—1. That neither count states facts sufficient to constitute a cause of action; and 2. That both counts appear to be barred by subdivision 1 of section 338 of the Code of Civil Procedure.

1. It is contended by counsel for respondent that the payment of the debt of the corporation, by the plaintiff, in excess of that part for which he was individually liable as a stockholder, was purely voluntary, and extinguished the debt as to all other stockholders; and therefore that plaintiff cannot be subrogated to the rights or remedies of Redington & Co. against the stockholders.

It is true that the doctrine of subrogation "is not to be applied in favor of one who has, officiously and as a mere volunteer, paid the debt of another, for which neither he nor his property was answerable, and which he was under no obligation to pay," nor where "it would work injustice to the rights of others." (Sheldon on Subrogation, sec. 1.)   It is also true that the plaintiff was not directly liable to pay defendant's proportion of the debts of the corporation; but as a stockholder he had a common, well-defined, beneficial interest, with all other stockholders, in the fund (the property of the corporation) from which defendant's proportion of the debts must have been paid, if not paid by defendant; and that fund was answerable for the debt. (*Miners' Ditch Co.* v. *Zellerbach,* 37 Cal. 591; 99 Am. Dec. 300; *San Diego* v. *San Diego etc. R. R. Co.,* 44 Cal. 116.) · There can be no doubt

that the plaintiff was entitled to contribution from the
defendant, to the extent of defendant's proportion of the
debt paid (Cook on Stock and Stockholders, sec. 27, and
authorities there cited; *Larrabee* v. *Baldwin*, 35 Cal. 156);
from which it follows that his payment was not volun-
tary, since contribution, no more than subrogation, is
allowed in favor of a mere volunteer; but in this case
the plaintiff, in addition to contribution, asks to be sub-
rogated to the rights and *remedies* of Redington & Co.
against the defendant, "for the purpose of compelling
contribution." (Sheldon on Subrogation, sec. 45; *Lamb*
v. *Montague*, 112 Mass. 353.)   Should he be thus subro-
gated, he will be entitled to the same remedy that Red-
ington & Co. were entitled to, as to which the statute of
limitations is three years (*Green* v. *Beckman*, 59 Cal. 545;
*Moore* v. *Boyd*, 74 Cal. 167); whereas, if he simply sought
contribution upon an implied *assumpsit*, his remedy
would be barred in two years. (*Chipman* v. *Morrell*, 20
Cal. 131.) This seems to be all he can gain by subroga-
tion, as it does not appear that Redington & Co. held
any securities for the debt except the promissory note of
the corporation, which added nothing to their remedy
against the stockholders, so far as the statutes of limita-
tion are concerned. (*Larrabee* v. *Baldwin*, 35 Cal. 168;
*Stilphen* v. *Ware*, 45 Cal. 110; *Hyman* v. *Coleman*, 82 Cal.
650; 16 Am St. Rep. 178.)

In *Mosier's Appeal*, 56 Pa. St. 76, 93 Am. Dec. 783,
Thompson, C. J., said: "I regard the doctrine [of sub-
rogation] as applicable in all cases, where a payment has
been made under a legitimate and fair effort to protect
the ascertained interests of the party paying, and when
intervening rights are not legally jeopardized or de-
feated. Such payments, whatever might be their effect
at law as extinguishing the indebtedness to which they
apply, will not be so regarded in equity, if contrary to
equity to regard them so." (See also *McCormick* v. *Ir-
win*, 35 Pa. St. 111; *Heart* v. *Bryan*, 2 Dev. Eq. 147;

*Wall* v. *Mason,* 102 Mass. 316; *Robinson* v. *Leavitt,* 7 N. H. 99.) The case of *Guy* v. *Du Uprey,* 16 Cal. 198, 76 Am. Dec. 518, recognizes the principle that a payment is not voluntary when made by a party who is interested in having the payment made. In the first section of Sheldon on Subrogation, the author, by way of definition, gives the following, which, so far as it goes, seems to be well sustained by the authorities cited:—

"It is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. The substitute is put in all respects in the place of the party to whose rights he is subrogated. It is derived from the civil law, from which it has been adopted by courts of equity. In this country, under the initial guidance of Chancellor Kent, its principles have been more widely developed, and its doctrines more generally applied, than in England. It is treated as the creature of equity, and is so administered as to secure real and essential justice, without regard to form, and is independent of any contractual relations between the parties to be affected by it. It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter; but it is not to be applied in favor of one who has, officiously and as a mere volunteer, paid the debt of another, for which neither he nor his property was answerable, and which he was under no obligation to pay; and it is not allowed where it would work any injustice to the rights of others."

The complaint is unnecessarily verbose, and perhaps uncertain and ambiguous as to some material matters; but I think it shows that plaintiff was interested in having the debt to Redington & Co. paid, and that he made the payment "under a legitimate and fair effort to protect" his own interest in the fund, which was liable

for the whole debt; and therefore that the payment was not voluntary in that legal sense which would preclude his right to contribution from the defendant, or his right to be subrogated to the remedies of Redington & Co. as a necessary means to enforce such contribution.

Counsel for respondent insists, however, that the complaint shows that the debt of the corporation to Redington & Co. was extinguished, and that it necessarily follows that the debt of the stockholders was also extinguished.

After sufficiently alleging the payment of the indebtedness on the account and the note, the complaint adds, as a conclusion from those facts, "that thereby all of the indebtedness of said corporation then subsisting to said Redington & Co., and all claims and demands of said firm upon said corporate note, were fully paid and extinguished." Even if the averment had been that the debt of *all the stockholders* was extinguished by the payment, it would have been only an erroneous conclusion from the facts stated, and evidently contrary to the intention of the pleader, whose sole object, plainly expressed, was to recover a stockholder's proportion of the debt. The word "extinguished" was probably used as synonymous with paid and satisfied. But it is not alleged that the debt of the defendant or other stockholders was "thereby extinguished." As to what will so extinguish the debt that the party paying cannot be subrogated to the rights and remedies of the creditor, see *Mosier's Appeal*, 56 Pa. St. 76; 93 Am. Dec. 783; and *Lamb* v. *Montague*, 112 Mass. 353.

2. It is contended that both causes of action appear to have been barred by section 338 of the Code of Civil Procedure at the time the third amended complaint was filed. But it does not appear on the face of the third amended complaint when the original complaint was filed, nor that the third amended complaint states a cause of action substantially different from those stated in the

original complaint; and therefore it does not appear on the face of the third amended complaint that either of the causes of action therein stated were barred. (*Ord* v. *De la Guerra,* 18 Cal. 75; *Farris* v. *Merritt,* 63 Cal. 118; *Kraner* v. *Halsey,* 82 Cal. 209.) For aught that appears on the face of the third amended complaint, the original complaint may have been filed on the eighth day of June, 1882, and within the period prescribed by section 338 of the Code of Civil Procedure, and may have stated, or imperfectly stated, a cause of action substantially the same as that stated in the first count of the complaint demurred to.

The original complaint, however, which was filed October 7, 1884, has been brought up as a part of the judgment roll, and also by a bill of exceptions; but the respondent contends that it is improperly here; that it does not belong to the judgment roll; and that, as there was no trial of any issue of fact, there was no proper occasion for a bill of exceptions.

By subdivision 2 of section 670 of the Code of Civil Procedure, which is applicable to this case, "the pleadings" are made a part of the judgment roll; but counsel for respondent contends that the original complaint has been wholly, and for all purposes, superseded by the third amended complaint, and therefore that it is not to be considered a pleading in the case, and consequently no part of the judgment roll. It has been said in a number of cases that an amended pleading supersedes the original; but I think a careful examination of those cases will show that it was only intended to *decide* that the amended pleading superseded the original for certain specified purposes, and only to the extent of the amendment. Beyond this, whatever may have been said is mere *dictum.* But in none of the cases has it been even said that the original is not a part of the judgment roll; nor has it been decided that an original complaint is superseded for the purposes of showing

when the action was commenced, and whether or not a new or different cause of action was introduced by the amendment. For the purpose of determining these questions, and perhaps others that may arise, which often become material on appeal, the amended complaint can by no possibility supersede the original.

Unless otherwise required by the court, an amendment to a complaint, whether it consists of a mere additional averment, or effects a change in the original, may be filed by itself without being incorporated in the original by engrossment of the complaint as amended (Code Civ. Proc., sec. 432), in which case it could hardly have been contemplated that the original should not become a part of the judgment roll. It is certainly always included as such by the clerk in making up the roll.

Is not the original complaint, though defective or imperfect, a pleading in the case? The trial court certainly was authorized to consider it as a part of the record of the pleadings in this case, for the purposes of ascertaining when the action was commenced, and determining whether a new cause of action was stated in the third amended complaint; otherwise that court could not have disposed of the questions of law raised by the demurrer as to the effect of the statute of limitations, since there was no opportunity to introduce evidence on the trial of pure questions of law, which must be tried on the pleadings alone. If the trial court was authorized to consider the original complaint as one of the pleadings of record without the introduction of it in evidence, I think it should be regarded as a part of the judgment roll.

If, however, the original complaint is not a part of the judgment roll, I think it is properly brought up by the bill of exceptions.

By section 647 of the Code of Civil Procedure, an order sustaining a demurrer is deemed excepted to, and in draughting his bill of exceptions the appellant was

entitled to incorporate therein "documents on file in the action," and such other available matter as was necessary to explain it. (Code Civ. Proc., sec. 648.) The original complaint was a document on file in the action, and it is necessary to explain the exception to the order sustaining the demurrer, and is therefore properly incorporated in the bill of exceptions.

The objection that a bill of exceptions is allowable only upon the trial of an issue of fact is answered by the case of *Tregambo* v. *Comanche M. Co.*, 57 Cal. 501, and by numerous other authorities. The word "trial," in section 650 of the Code of Civil Procedure, means a trial of an issue of law as well as the trial of an issue of fact. (Anderson's Law Dict., and numerous authorities there referred to.)

I think the third amended complaint does not state a cause of action substantially different from those stated in the original complaint.

The original complaint is upon the same two promissory notes, set out in the third amended complaint, alleging that they were made for value received by the corporation, and that for value received the corporation assigned the same to plaintiff *by indorsement*, and delivered the same to the plaintiff. It does not state that the value received for the making of the notes was money loaned to and paid for the corporation at divers times between September 1, 1879, and June 1, 1882, nor that it was the balance of a "mutual, open, and current account" running from September 1, 1879, to June 1, 1882, as stated in the third amended complaint; but the substance of these more special yet indefinite statements is included in the general averment of the original complaint that the notes were made "for value received." Had the original complaint merely added to the phrase "for value received," the words "to wit, moneys loaned to and paid for the corporation at divers times between September 1, 1879, and June 1, 1882," it

would have been quite as specific as to what was the consideration of the notes, as is the third amended complaint. The amendment in this respect only made the general averment in the original complaint, that the corporation received value for the notes, a little more specific, still leaving it indefinite as to the dates and amounts of the several loans and payments.

The averment as to the mutual open account, in the third amended complaint, is of doubtful sufficiency to extend the period of limitation, even against the corporation. As to the stockholders, it can have no effect whatever, even though sufficiently alleged. The corporation had no more power to extend the period of limitation as against the stockholders by a mutual open account than by making its promissory note. The liability of the stockholders is created and exists by statute. It arises when a debt is contracted by the corporation. It is limited to three years from the time it arises; and it is well settled in this state that the corporation has no power to extend that limitation without direct authority from the stockholders.

The original complaint alleges an assignment of the notes by indorsement and delivery, and also states facts from which an equitable assignment and subrogation would result in the absence of a legal assignment. The amended complaint omits the legal assignment by indorsement, this being the only difference. The effect of each mode of assignment against the defendant would be the same.

I think each count of the third amended complaint, subject to some degree of uncertainty and perhaps ambiguity, states a cause of action not substantially different from those defectively stated in the original complaint, and that so much of the alleged indebtedness as accrued after the seventh day of October, 1881, does not appear to have been barred by the statute of limitations at the time of the commencement of the action.

Unless the payments made by the corporation were otherwise specially applied by either party, they should be applied to the items of indebtedness in the order in which they were contracted as to time.

I think the judgment should be reversed, and the cause remanded, with direction to the court below to overrule the demurrer.

Belcher, C., and Foote, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment is reversed, and the cause remanded, with direction to the court below to overrule the demurrer.