[Civ. No. 4220.　Second Appellate District, Division Two.—October 29, 1923.]

In the Matter of the Estate of WILLIAM PERRY CARD. M. KESSLER, Administrator, etc., et al., Appellants, v. ADDIE V. STEWART, etc., Respondent.

[1] ESTATES OF DECEASED PERSONS—ACCOUNT OF ADMINISTRATRIX—UN-VERIFIED CLAIMS—IMPROPER SETTLEMENT OF ACCOUNT.—Where a resident of a sister state owning real and personal property situated therein conveyed the real property to his two minor sons shortly before his death in said state, his personal property being converted after his death without administration into cash by his adult daughter, who paid out of such cash certain amounts for various items, leaving a balance in her hands, the daughter, who was subsequently appointed administratrix of his estate in this state, which consisted of a piece of real property of small value, was not entitled to have said amounts so paid out by her upon unverified claims credited to her in her account as administratrix, and it was error under such circumstances for the probate court to settle said account.

[2] ID.—FAMILY ALLOWANCE FOR PAST PERIOD—ORDER AWARDING—VALIDITY OF.—An order awarding to minors a family allowance for a period of time which had already passed and during which the minors had been maintained from other sources was proper.

APPEAL from an order of the Superior Court of San Diego County settling administratrix's account and from an order granting a family allowance. E. A. Luce, Judge. Order settling account reversed. Order granting family allowance affirmed.

The facts are stated in the opinion of the court.

William Ellis Lady for Appellants.

Henry E. Carter for Respondent.

WORKS, J.—William Perry Card died intestate in Oklahoma. At the time of his decease he was a resident of that state. When he was in his last illness, as it afterward transpired, he wired his daughter, Addie V. Stewart, who resided in Los Angeles County, California, that he was ill and she immediately proceeded to Oklahoma by train. Mrs. Stewart

had no reason to suppose that her father's death was imminent and prepared to remain in Oklahoma long enough to nurse him back to health. Unfortunately, however, he passed away before she reached his bedside. Card had been married twice and Mrs. Stewart was a child of his first matrimonial union. His second marriage had been dissolved by divorce. At the time of his decease he had residing with him two minor sons, the fruits of this latter union. Up to within a few days before his death Card was the owner of 180 acres of land in Oklahoma, but at that time he transferred the property to his sons in consideration of love and affection. At his decease he left in Oklahoma certain cash, cattle, and other personal property. The cash was in bank and was by Mrs. Stewart, immediately upon her arrival in the state, withdrawn by means of signed checks which Card had prepared prior to his decease. She also converted into cash the cattle and other personal property. These steps toward a summary administration of the estate of Card were all taken without the sanction of the laws of Oklahoma providing for the settlement of the estates of deceased persons. Out of the proceeds thus arising from her father's Oklahoma property Mrs. Stewart then paid out certain amounts, for purposes which are specifically shown below, and departed for California with the balance remaining in her hands, the sum of $600. This amount was consumed by the order for family allowance hereafter to be mentioned. On her return to California Mrs. Stewart was accompanied by her two minor half-brothers.

Card left real property in the county of San Diego, in this state, appraised at $750. He left no other property in California. After her arrival in this state Mrs. Stewart applied for letters of administration in San Diego County and they were issued to her. Upon the presentation of her first and final account, after the settlement of which her trust as administrator was terminated, she was allowed credit for certain amounts which she had expended on and in connection with her journey to Oklahoma and return. The items constituting these expenditures are stated thus in the account: ''Amount of railroad fare to Oklahoma and return to conserve property of deceased, $103.64. Railroad fare for Perry Madison Card and William Purl Card from Denison, Texas, to Los Angeles, $99.82. Expense of berths for

said minors from Denison, Texas, to San Antonio, $8.42. Railroad fare from Caney, Oklahoma, to Denison, Texas, $2.50. To Doctor's fees paid to Dr. Henderson of Oklahoma, for services to deceased, in his last illness, $65.00. Paid to druggist for medicine for the deceased during his last illness, $1.60. Paid to Mr. Cooper of Oklahoma for coffin and funeral expenses of deceased, $60.00. Paid for groceries being an indebtedness of deceased, $7.48. Paid to C. L. Skinner of Oklahoma for pasturage of decedent's cattle, $3.50. Paid for writing contract and telephone bill at Oklahoma, $1.40. Paid to [six named persons] for gathering cattle upon range at Oklahoma, $39.00. Paid to Mr. Cooper for feed and care of cattle, $6.50. Paid to T. M. Akers, Notary Public, $2.50. To A. L. Childress for board for said minors, $11.40. For grave marker for decedent, $35.00. Amount paid for coats and caps for minors, $14.50. For taxes on property in Oklahoma, $29.80. To two pairs of stockings for said minors, $.50. For suits, shirts, underwear and overalls for said minors at Oklahoma, $40.00. To expenses for board, etc., for said minors from Oklahoma to Los Angeles, $15.39. J. A. Dirke for horse hire for gathering cattle, $4.50.'' These items make a total of $587.55, and it will be observed that they alone, without regard to attorney's and administrator's fees and other costs of administration, practically consume the California estate, appraised, as we have already remarked, at $750. There is a difference of but $162.45 between the two amounts. One Clara Card asserts a claim against the estate upon a California judgment for $1,380, together with $16 costs, rendered in March, 1919, with interest from that date. That creditor and the present administrator of the estate appeal from the order of the trial court settling the account of Addie V. Stewart, as the former administrator, and from a certain order granting a family allowance to the minor sons of decedent.

[1] Appellants contend that the trial court erred in giving Mrs. Stewart credit as administrator for each of the items set forth above and totaling $587.55. No verified claim was presented against the estate as to any of these items, and appellants insist for that reason that none of them may be allowed. We see no escape from this contention. The necessity for the presentation of verified claims

by creditors of the estates of deceased persons is fixed by
sections 1493–1496 of the Code of Civil Procedure, but it
is provided in another section of the same code (sec. 1632)
that executors or administrators may be allowed credit upon
the settlement of their accounts for amounts paid under cer-
tain circumstances upon demands not founded upon verified
claims. The section reads, in part: "If . . . it appears that
debts against the deceased have been paid without the affi-
davit and allowance prescribed by statute . . . and it shall
be proven by competent evidence to the satisfaction of the
court that such debts were justly due, were paid in good
faith, that the amount paid was the true amount of such
indebtedness over and above all payments or set-offs, and
that the estate is solvent, it shall be the duty of the said
court to allow the said sums so paid in the settlement of
said accounts." Although the application of this enactment
is limited, in strictness, to those cases in which executors
or administrators make voluntary payments of demands,
there are instances in which such payments, when made by
individuals who later become executors or administrators,
will be approved and due credit given. It is said in an
opinion of the district court of appeal which was adopted
by the supreme court: "There was allowed to the adminis-
trator credit for a payment of one thousand five hundred
dollars to the Portuguese-American Bank. . . . This pay-
ment was made . . . four days subsequent to the date of
filing his petition for letters of administration. Whether a
payment could be allowed when made by a stranger to the
administration and before he had become connected there-
with need not be at this time determined, although some
California authorities incline to their allowance. (*In re
Galland's Estate*, 92 Cal. 293 [28 Pac. 287].) In *Estate of
Heeney*, 3 Cal. App. 553 [86 Pac. 842], this court uses the
following language: 'One thing is certain, and that is that
the law does not contemplate that the claims of an adminis-
trator for reimbursement for moneys expended before his
appointment, can be established by his uncontradicted evi-
dence.' But in the instant case the petitioner had already
filed his petition and the widow had consented in writing to
his appointment. At the time of making the payment there
existed practically no doubt that in a few days he would be
appointed. The estate was paying interest on the amount

and it was clearly for the best interests of the estate that the obligation should be liquidated without delay. Under these circumstances we find no embarrassment in holding that the appointment subsequently made related back, for the purposes of this payment, to the date of filing the petition for letters. This view finds support in 11 R. C. L., page 464, where we read: 'In effect the subsequent granting of letters of administration relates back to the death of the intestate, and makes valid acts which otherwise would or might have been tortious.' This payment was properly allowed'' (*Estate of Machado,* 186 Cal. 246 [199 Pac. 505]). It is plain to us that respondent cannot come within the rule announced in this quotation. As decedent departed this life in Oklahoma, as that state was the place of his residence, and as he left property there, Oklahoma was the jurisdiction within which the principal or domiciliary administration of his estate should have taken place and may yet have to take place. His Oklahoma estate was properly the fund out of which, primarily, his Oklahoma debts should have been settled. His California estate bears legally the same relation to his California debts, with the proviso that any administration of the California estate should have been merely ancillary to an Oklahoma administration. It is plain that the California estate is insufficient to pay the claim of Clara Card, to say nothing of the claims of other California creditors, if such there are. The creditors here have the right to exhaust the California estate for the payment of their claims, after the payment of the costs of administration and, perhaps, the funeral expenses and expenses of the last illness, provided that a due and formal administration of the Oklahoma estate should demonstrate that they could not be paid by the estate located in that jurisdiction, all this, however, with the proviso that if the estate as a whole were insolvent, creditors of the same grade must prorate from the proceeds derived from the property in both California and Oklahoma. By her summary methods of procedure while in Oklahoma respondent did all she could to nullify these rules of law. Moreover, she essayed to settle the affairs of decedent in Oklahoma without the aid of the courts, a thing not favored by the laws. Whether she actually accomplished all these results we cannot know. There may be creditors in Oklahoma whom she did not reach.

Those creditors may already have taken out letters of administration there, or they may hereafter do so. The deed conveying the Oklahoma real property to the minor sons, executed a few days before Card's death in consideration of love and affection, may have been set aside, or it may hereafter be set aside, at the suit of Oklahoma creditors, or, if sufficient grounds existed, it might be set aside by California creditors whose claims could not be satisfied out of the California estate. _All these considerations will serve to show the lamentable condition in which the estate of Card now stands. They will also demonstrate the necessity of our conclusion that the California estate should not be saddled with the liquidation of the items making up the total of $587.55, or, at least, that estate should not be called upon to meet them in the absence of verified claims presented by the original creditors. The rules of law which we have stated as bearing upon the relationship between a domiciliary and an ancillary administration of the estate of a deceased person are epitomized in a standard law publication (see 24 C. J. 1110–1128).

[2] The only remaining point relates to the order for family allowance. On July 21, 1922, the court made its order awarding to each of the minor sons of decedent the sum of $25 per month from January 27, 1918, to January 27, 1919, or the total sum of $600. Appellants contend that the court was without jurisdiction to make such an order for a period of time which had already passed and during which the minors had been maintained from other sources. The order was proper under section 1464 of the Code of Civil Procedure, as construed in *Estate of Moore,* 170 Cal. 60 [148 Pac 205].

The order for family allowance is affirmed. The order settling the first and final account is reversed, with directions to the trial court to disallow the credits above mentioned, amounting to $587.55.

Finlayson, P. J., and Craig, J., concurred.