[L. A. No. 14548.  In Bank.—March 22, 1935.]

In the Matter of the Estate of ULYSSES S. GRANT, Jr.,
Deceased.

Harrison G. Sloane for Appellant.

Wright, Monroe, Thomas & Glenn for Respondent.

CURTIS, J.—U. S. Grant, Jr., died leaving a last will and testament in which his wife, the respondent, America W. Grant, was named as the executrix thereof, and as his sole devisee. Upon her appointment as such executrix she duly published notice to creditors, and within the time provided by law for the presentation of claims two claims were presented and allowed against said estate, one by S. A. Reed in the sum of $457.03, and the other by the trustees of George J. Keating Medical Fund in the sum of $7,200. The last-mentioned claim was secured by a mortgage upon real property belonging to said deceased. Subsequent to the allowance and filing of said claim the trustees of said medical fund foreclosed said mortgage and bought in the mortgaged property. After applying the proceeds of said sale to the amount due under the decree of foreclosure there remained a deficiency of $3,764.94 due under said decree for which deficiency a judgment was duly docketed against the estate of said deceased. There were also two preferred claims filed against said estate, but as they were paid by said executrix they are in no way involved in the present controversy. After the payment of these preferred claims and the costs of administration, excepting executrix's and attorney's fees, the court decreed that there remained in the hand

of said executrix the sum of $2,443.11, less definite amounts to be paid on executrix's and attorney's fees, and an indefinite amount to discharge any inheritance tax which might be found due from said estate. The balance remaining in the executrix's hands was to be applied *pro rata* upon the two nonpreferred claims against said estate and the claim of the executrix which arose under the following circumstances: At the time the deceased died he was indebted to the U. S. Grant, Jr., Hotel in the sum of $1759.44, the payment of which had been guaranteed by Mrs. Grant. The hotel company deducted this amount from a dividend subsequently declared on stock in said company belonging to Mrs. Grant. The other debt paid by Mrs. Grant was based upon a promissory note executed by Mr. and Mrs. Grant, the latter simply as surety, in favor of the Bank of America. The bank came into possession of funds, after the death of the deceased, belonging exclusively to Mrs. Grant, out of which it paid the amount due on said note, amounting at that time, principal and interest, to $6,092. Neither the hotel company nor the Bank of America filed any claim against said estate for its debt against the deceased. Although these two amounts, due primarily by the deceased, were paid by Mrs. Grant from her own separate funds, she filed no claim against said estate for either of said amounts. In her final account she claimed, however, that these two amounts represented legal claims against the estate of her husband, and asked that the remaining funds in her hands as the executrix of the will of said deceased be applied in payment *pro rata* on the aggregate amount of these two debts as well as on the two claims of S. A. Reed and the trustees of the Keating Medical Fund. The trustees of said fund filed written objections to said account and to the payment to Mrs. Grant, or to the retention by her, of any amount on account of these two claims, on the ground that neither of them was ever filed as a claim against said estate. The probate court after a hearing overruled the objections of said trustees to said account and entered an order directing said executrix to apply the balance of money in her hands to the payment *pro rata* of the claims against said estate, including the two amounts, aggregating the sum of $7,851.44, paid by Mrs. Grant in settlement of the debts of her husband due said hotel company and the Bank of Amer-

ica, respectively. From this order the trustees of said medical fund have appealed.

As U. S. Grant, Jr., died September 26, 1929, and prior to the adoption of the Probate Act, all proceedings in his estate for giving of notice to creditors were governed by the Code of Civil Procedure. Section 1490 provides for the publication of the notice to creditors. Section 1491 limits the time in which claims may be presented to six months after the first publication of said notice, and section 1493 provides that all claims arising upon contract must be filed or presented within the time limited in the notice, and any claim not so filed or presented "is barred forever". Section 1510 provides that if the executor or administrator is a creditor of the decedent, he shall file his claim with the clerk, who must present it for allowance or rejection to the judge. Section 1632 of the Code of Civil Procedure was reenacted without substantial change as section 929 of the Probate Code, which reads as follows: "If it appears that debts of the decedent have been paid without verified claims having been filed or presented and allowed and approved, and it shall be proven that such debts were justly due, were paid in good faith, that the amount paid was the true amount of such indebtedness over and above all payments or setoffs, and that the estate is solvent, the court, in settling the account, shall allow the sums so paid."

Appellants contend that under the provisions of this last-mentioned section an executor or administrator may have debts, which he has paid without the presentation of verified claims therefor, allowed only in estates which are solvent, and that in estates which are insolvent the court is without any authority to allow debts of the deceased paid by the executor or administrator in the absence of any presentation of verified claims therefor, and if debts against an insolvent estate are paid without verified claims therefor having been filed or allowed, then the executor or administrator paying the same cannot have them allowed in the settlement of his account. We are of the opinion that this contention must be sustained.

Under the sections of the Code of Civil Procedure cited above as in force prior to the adoption of the Probate Code (and the rule is now the same under the Probate Code), all claims against the estate of a decedent arising upon contract

must be filed or presented within the time prescribed in the published notice to creditors, and if not so filed or presented they are forever barred. There are certain exceptions to this requirement but no contention is made that any of these exceptions has any application to the present controversy except possibly section 1632 of the Code of Civil Procedure, now section 929 of the Probate Code. This section in express language permits the allowance of debts paid by the executor or administrator without the presentation or allowance of verified claims therefor in solvent estates only. No mention is made of debts against insolvent estates, and by no process of reasoning can its terms be construed to include such debts. The maxim *expressio unius est exclusio alterius* applies in this instance with controlling force.

While a statute with provisions similar to section 1632 of the Code of Civil Procedure and section 929 of the Probate Code has in various forms been in force in this state since the year 1872, the question presented on this appeal has never been directly passed upon by the courts of this state. It was before the court in the *Estate of Card*, 64 Cal. App. 268 [222 Pac. 145], but that case was evidently decided upon another point, leaving the question in which we are now interested undecided. In the *Estate of Machado*, 186 Cal. 246, 249 [199 Pac. 505], the administrator paid certain notes held against the estate without requiring verified claims therefor to be filed or allowed. His acts were approved on the authority of section 1632 of the Code of Civil Procedure, but in that case the court found the estate to be solvent. The *Estate of Houston*, 205 Cal. 276 [270 Pac. 939, 60 A. L. R. 730], is in many respects similar to the instant proceeding, but differs from it in other material aspects. In that estate the court allowed a number of claims against the estate based upon debts paid by the executrix for which no verified claims had been filed or presented. The court found that said estate at the time of such payment, and long prior to the expiration of the time for presenting claims against it, was solvent. Over eighteen months after the time for presenting claims had expired, the claimant therein commenced an action in tort against said estate based upon the alleged negligence of the deceased. This action resulted in a judgment against said estate in an amount exceeding the sum of $10,000. Before the estate was settled it became insolvent. This court

held that on account of the many equitable features existing in favor of the executrix in that estate, and by reason of appellant's lack of diligence in initiating proceedings to establish his claim, equity would not come to his aid, and refused to disturb the settlement of said account by the trial court. We might say at this juncture that the respondent in this case places great reliance upon the *Estate of Houston, supra,* in support of the order of the trial court allowing the debts of the deceased paid by her without their formal presentation as verified claims. But in the present proceeding there are no such equitable features in favor of the executrix as existed in the *Estate of Houston, supra,* which caused the court to refuse relief to the appellant therein. The present estate was never solvent. The debts of the estate paid by the executrix without claims being filed therefor were paid with knowledge of the insolvency of the estate. The appellants herein were prompt and vigilant in the presentation of their claim and in the enforcement of their rights against said estate. They filed their claim based upon the promissory note of the deceased secured by said mortgage. Without any unnecessary delay they instituted an action to foreclose said mortgage and prosecuted it diligently to final judgment, and after a sale of the mortgaged premises under said judgment they docketed the deficiency judgment against said estate. The executrix was not deceived nor misled at any stage of these proceedings by any act of the appellants. As noted before, the estate was insolvent from its inception, and she made these informal payments of her husband's debts with knowledge of its insolvent condition. We feel justified in making this statement by the fact that the total assets of the estate were less than $3,600, while the debts paid by her amounted to more than double this amount. She is presumed to know that the law would not permit reimbursement under those conditions without verified claims being filed against the estate. It is probably true, as her counsel claim in their brief, that she considered the debt of appellants adequately secured and she did not anticipate that a deficiency judgment might arise out of said indebtedness. If she was thus lulled into security, it was by no act of appellants. If she arrived at an erroneous conclusion, the fault was not appellants' but her own. Under these circumstances we are constrained to

hold that there are no equitable features in this case which take it out of the explicit direction of the code sections governing the presentation and allowance of claims against estates of deceased persons.

Respondent contends that in this code section the legislature does not specifically say that no allowance may be made if the estate is insolvent, but merely provides that the allowance must be made under the circumstances stated therein if the estate is solvent. This construction of the statute, in our opinion, is correct, but we fail to see how it benefits respondent. This section directs the allowance of debts under the circumstances stated therein without verified claims therefor being presented or approved. It is an exception to the general rule set forth in other sections of the code referred to above providing generally that all claims based upon contract against an estate of a decedent must be presented and approved, or they are forever barred. Respondent cannot bring herself within the general rule, as the debts paid by her were not presented or allowed as provided by the general rule. She cannot come within the exception, as it applies only to solvent estates. In neither case has respondent shown that she is entitled to an allowable claim against said estate.

Respondent further contends that section 929 of the Probate Code should be construed to mean that debts paid by the executrix without their presentation and allowance may be allowed and paid in full when the estate is solvent, but when the estate is insolvent they are only to be paid *pro rata* with the claims of other general creditors. We think this argument has been answered by what we have already said as to the meaning of this section. It deals expressly and solely with debts of the deceased where the estate is solvent. To extend its terms so as to provide for the *pro rata* payment of debts of an insolvent estate would in effect amount to the reading into the section of language which is not to be found therein, and which by no reasonable construction of the section, was it the intention of the legislature to include therein.

As to the contention that the construction given the code sections leads to unjust and absurd results, we can see nothing unjust in requiring an executrix, or other personal representative of the deceased to comply with the law requiring

the presentation and allowance of verified claims against an estate before the same can be paid. Other creditors of the estate are subject to these requirements, and we see no good reason why the executrix should not also be bound by them. Especially is this true when an estate is insolvent and every effort should be made to conserve the estate's assets for the benefit of the creditors. These same observations apply to the claim of respondent that the results are absurd. It may be possible to imagine a combination of circumstances in which the application of the law as contained in these sections of the code might lead to unusual results. No such unusual or absurd result is shown to exist in the present proceeding. The fact that these sections of the code have been in effect almost from the foundation of our state government, and no successful attempt has been made to amend them, nor has any of the absurd results, which counsel for respondent appear to fear, ever engaged the attention of the appellate courts of the state, leads us to believe that the principles of law embraced within these sections are not inequitable and that the unjust and absurd results which may possibly flow from their enforcement are more imaginary than real.

Respondent has cited a number of decisions of this court and of the District Court of Appeal in which the payment of unverified claims against the estate has been approved, but an examination of these authorities shows that in each instance the payment was made under circumstances where it was necessary either to protect the property of the estate, or advance the estate's interest. None of these cases has any application to a payment like that made by respondent in this estate, from which the estate received no direct or indirect benefit whatever. We are of the opinion, therefore, that the order of the probate court allowing the amounts of the debts of the deceased paid by the executrix without the filing or presenting of verified claims therefor, and directing their payment *pro rata* with the other nonpreferred claims against said estate should not be sustained.

Respondent relies upon the case of *In re Wiley's Estate,* (N. J.) 65 Atl. 212, which involved the right of an executor to retain the amount of a debt due him from the deceased. It does not appear from the facts stated in the opinion whether the executor had presented a verified claim

against the estate, or whether the law of that state, New Jersey, made any such requirement. In that case the court held that, "With reference to the right of retainer, the contention by the accountant that, although this estate is insolvent, he has the right to retain his debt in full is not supported by the law in this state and the orphans' court correctly found that he must accept a dividend along with the other creditors." Evidently the common-law doctrine of right of retainer was to an extent in effect in that state. Under that doctrine the executor or other personal representative of the deceased was permitted to retain from the proceeds of the estate so much of the assets thereof as would pay his debt before any other creditor was paid whose debt was of equal worth. (3 Blackstone's Commentaries, 18.) This doctrine, if ever in effect in this state, was repudiated as early as the year 1851 by an act of the legislature which required the executor or other personal representative of the deceased to present his claims against the estate (Stats. 1851, p. 466), and for failure to do so lost his right to have the same enforced against the estate. (*Estate of Taylor,* 10 Cal. 482; *Estate of Taylor,* 16 Cal. 434; *Estate of Hildebrandt,* 92 Cal. 433 [28 Pac. 486].)

It is therefore ordered that the order settling the first account of executrix be modified by striking out the last line of said order, reading as follows: "America W. Grant . . . $7,851.44", and that, as modified, said order be and it is hereby affirmed.

Shenk, J., Preston, J., Waste, C. J., Langdon, J., Thompson, J., and Seawell, J., concurred.