[Civ. No. 4708. Fourth Dist. Jan. 22, 1954.]

ALFRED A. GRANT III, as Executor, etc., Appellant, v. DONALD F. DE OTTE, as Executor etc., et al., Respondents.

Wadsworth & Fraser for Appellant.

Paul N. McCloskey for Respondents.

GRIFFIN, J.—This is an action for equitable subrogation of a claimed lien to the lien of a deed of trust, or in the alternative to declare an equitable lien upon the proceeds of the sale of the real property formerly covered by the deed of trust. It was brought by plaintiff and appellant Alfred A. Grant III, as executor of the last will and testament of Alfred A. Grant II, deceased, against Donald F. de Otte, as executor of the last will and testament of Ruth de Otte Hitchner, deceased, the Corporation of America, a corporation, and Eugene Best, defendants and respondents. A general demurrer to the amended complaint was sustained without leave to amend, and the action was dismissed. Plaintiff appeals.

The only question presented is whether the facts pleaded would entitle plaintiff to an equitable lien on the property involved. The amended complaint is voluminous. It alleges generally that Ruth and Adam Hitchner were husband and wife and made their promissory note for $20,000 in 1945, to defendant Corporation of America, as trustee. They gave as security a trust deed on acreage and a home in Palm Springs, which they held as joint tenants. The property carried certain rights to water stock appurtenant to it which were also transferred as security. Mr. Hitchner met his death on October 12, 1946. Ruth was charged with his murder. Alfred A. Grant II and defendant Eugene Best, attorneys, were employed by her to defend her, and in December, 1946, she was acquitted.

It is alleged that Ruth agreed to pay Alfred A. Grant II $2,500 for his fee, and that in November, 1947, an account was stated in this amount between them; that she did not have sufficient money to pay said amount and that she orally agreed that she would sell the real property described and

pay this amount from the proceeds of the sale. No claim is made in the amended complaint for this amount.

It is then alleged that in October, 1946, Ruth also employed Grant II for the purpose of assisting her in selling the property; that he listed it with real estate agents and advertised it extensively at his own expense and showed the property until his death on January 9, 1950; that he was unable to effect a sale; that during this period Ruth was unable to pay the monthly installments of principal and interest on the note and trust deed and she defaulted in the payment thereof; that she was also financially unable to care for and keep up the property, as required by the provisions of the trust deed attached to the amended complaint; that Ruth requested Grant II to make the payments necessary for these purposes; that to prevent the loss of his $2,500 by reason of the foreclosure of the trust deed then in default, and in reliance on the promise of Ruth to repay him from the proceeds of the sale, he advanced, from November 13, 1946, to February 4, 1949, $7,672.96, as itemized; that after Ruth's death on February 4, 1949, defendant de Otte, as executor of her will, requested Grant II to continue the former payments made, since the estate had no assets and that from February 4, 1949, until his death on January 9, 1950, he advanced $1,300.64 for this purpose. He does not make claim to this last mentioned sum in this action.

It then alleges that after Grant II's death plaintiff Grant III was appointed executor of Grant II's estate, and the note and trust deed became delinquent for nonpayment of monthly installments, taxes, etc.; that the defendant Corporation of America paid, under the terms of the trust deed, delinquent taxes amounting to $1,197.78 on May 15, 1950; that on May 26, 1950, the trustee gave notice of default and election to sell the property; that de Otte informed Grant III he could not cure the default and requested Grant III to purchase the note and trust deed so that the property could be sold on the market and pay preferred claims; that accordingly plaintiff purchased them on August 12, 1950, for $13,988.99 in cash, and notice of rescission was given and recorded; that thereafter he and de Otte, as executor, diligently attempted to sell the property but were unsuccessful; that finally, on June 6, 1951, plaintiff Grant III commenced this action; that thereafter the sale of the property for $35,000 was made and confirmed in the estate; that since this action was a cloud on the title it was stipulated by the executor and plaintiff that upon

payment to plaintiff of the principal and interest accrued on the trust deed, plaintiff would release his trust deed lien and that $9,500 of the proceeds of the sale would be impounded by the court until the final judgment in this action and that said sum would constitute the only fund or property of the estate of Ruth Hitchner, deceased, of which resort might be had to satisfy any judgment obtained.

It then prayed that said sum of $9,500 be declared subject to the lien of the deed of trust in lieu of the real property formerly subjected thereto, and that plaintiff be subrogated to the rights of the defendant Corporation of America, trustee, with respect to the payments of $7,672.96, made by Grant II, deceased, plus interest; and that the lien of the trust deed be revived for said purpose, and for equitable relief.

There is no allegation that plaintiff filed any claim in the estate of Ruth Hitchner, deceased, for the amounts advanced, and plaintiff concedes that none was filed. Defendant Eugene Best filed and has an approved claim in the estate for his attorney's fees, totaling $3,000, which remains unpaid. The defendant Corporation of America was eliminated from the action by plaintiff's purchase of the trust deed and note.

It is respondents' contention: (1) that the advancements made under the claimed oral agreement between Grant II and Ruth were only made by Grant II for the protection of his $2,500 attorney's fees due him, and not for the protection of the estate; (2) that by the agreement Grant II agreed to advance the money for a particular purpose solely upon the promise of the client to repay him from a particular fund to be created in the future; and that accordingly, repayment was not due until the property was sold, and that thereafter it could not be a lien upon the property but could only be satisfied by means of a claim against the estate, citing such cases as *Estate of Dobkin,* 38 Cal.App.2d 276 [100 P.2d 1091] ; *Thompson* v. *Orena,* 134 Cal. 26 [66 P. 24] ; *Lesser* v. *Pomin,* 3 Cal.App.2d 117 [39 P.2d 451] ; and section 707 Probate Code ; (3) that the agreement made no provision for interest or security ; (4) that as attorney and client a confidential relationship arose, and that accordingly the agreement between them was presumptively void and was without consideration, citing *Estate of Kromrey,* 98 Cal.App.2d 639 [220 P.2d 805] ; (5) that the amended complaint fails to state a cause of action because it fails to allege that a probate claim was filed, citing such cases as *Estate of Grant,* 2 Cal.2d 661 [43 P.2d 266] ; and *Burke* v. *Maguire,* 154 Cal. 456, 463 [98 P. 21] ; (6) that plain-

tiff will not be granted relief by subrogation where he has been guilty of negligence in not filing a claim or where, to grant such relief, would operate to the prejudice of another; and (7) that if the lien were allowed, as prayed for, it would render the estate insolvent and would prejudice others interested in the estate, including a creditor, Mr. Best, who did file a claim for his attorney's fees, and that accordingly equity will not come to the aid of one who, through his own delay or his own fault has lost the remedy which the law has provided, citing such cases as *Howard* v. *Societa di Unione e Beneficenzo Italiana*, 62 Cal.App.2d 842 [145 P.2d 694].

■ Plaintiff correctly points out that if this action to enforce an equitable lien is maintainable, it may be brought without first filing a claim in the estate. (Prob. Code, § 716; *Silva* v. *Dias*, 46 Cal.App.2d 662 [116 P.2d 496]; *Fullerton* v. *Bailey*, 17 Utah 85 [53 P. 1020]; *Estate of Schluter*, 209 Cal. 286 [286 P. 1008]; *Grayson* v. *Crawford*, 189 Okla. 546 [119 P.2d 42]; *Calkins* v. *Steinbach*, 66 Cal. 117 [4 P. 1103].)

■ The only remaining question is whether grounds for an equitable lien are stated. Considering the facts pleaded which, for the purpose of this decision we must assume could be established at the trial, the contentions made by defendants appear to be untenable. The allegation of the amended complaint is that the payments were made by Grant II not only to secure the payment of his $2,500 fee, but to secure the property from loss, to prevent foreclosure in order that he might sell the property pursuant to the terms of his employment agreement, and upon the agreement of Ruth that she would repay him such advancements from the proceeds of sale in the amounts alleged.

■ Generally, the fundamental prerequisites in every case for equitable subrogation are stated to be: (1) Payment must have been made by the subrogee to protect his own interest. (2) The subrogee must not have acted as a volunteer. (3) The debt paid must be one for which the subrogee was not primarily liable. (4) The entire debt must have been paid. (5) Subrogation must not work any injustice to the rights of others. (50 Am.Jur. p. 688, § 10; 50 Am.Jur. p. 742, § 97.)

In *Estate of Henshaw*, 68 Cal.App.2d 627 [157 P.2d 390], it was held that while ordinarily a promise to pay an obligation out of the proceeds of a specific fund is not a present assignment of any portion of the fund, a court may, in an effort to see that equity is done, relax this rule and permit evidence to show the intention of the parties beyond the

limited words of the contract. There, petitioner agreed to cancel a note and look to payment out of the beneficiary's contingent interest in the trust estate. The court said:

"The accepted rule is that equitable liens are favored to do justice and prevent unfair results. (Citing cases.) When therefore after a full and impartial hearing the trial court finds upon the only reliable evidence presented that the parties intended to create an equitable assignment and an equitable lien such finding should not be disturbed."

See, also, 33 American Jurisprudence, pages 428, 429, sections 19-20; 50 American Jurisprudence, page 686, section 8. In Pomeroy's Equity Jurisprudence, Fifth edition, volume 4, pages 640-641, section 1212, it is said, in speaking of equity subrogation:

"The doctrine is also justly extended, by analogy, to one who, having no previous interest, and being under no obligation pays off the mortgage, or advances money for its payment, at the instance of a debtor party and for his benefit; such a person is in no true sense a mere stranger and volunteer."

It is a general rule that one who, acting in a representative capacity, satisfies obligations for the benefit of his principal, is subrogated to the rights of the creditor against the principal. (*McColgan* v. *Bank of California Assn.*, 208 Cal. 329 [281 P. 381, 65 A.L.R. 1075].)

In *Redington* v. *Cornwell*, 90 Cal. 49, 58 [27 P. 40], in speaking of equitable subrogation, the court, quoting from Sheldon on Subrogation, said:

" 'It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter; but it is not to be applied in favor of one who has, officiously and as a mere volunteer, paid the debt of another, for which neither he nor his property was answerable, and which he was under no obligation to pay; and it is not allowed where it would work any injustice to the rights of others.' "

See, also, *Fuller* v. *Harwell*, 126 Cal.App. 654 [15 P.2d 562], where the subrogee, an execution creditor, satisfied a mortgage under the mistaken belief that he had an execution lien on the property. Subrogation was granted. Also, in *Fresno Inv. Co.* v. *Brandon*, 79 Cal.App. 387 [249 P. 548], taxes were mistakenly assessed and became a lien on the subrogee's property. The subrogee paid the taxes and was

subrogated to the rights of the tax collector against the party whose taxes the subrogee had paid. See, also, *Zeigler* v. *His Creditors*, 49 La.Ann. 144 [21 So. 666], where it was specifically held that a general creditor has a sufficient interest in the property of the debtor to warrant the payment of a lien on the debtor's property. The court held that such an interest is sufficient to invoke the doctrine of subrogation, and stated, on page 684, that:

". . . Until the superior mortgage debt is discharged, the creditor of inferior rank gets nothing. He is concerned, therefore, in making that payment of the superior debt which prevents a sacrifice of the common pledge, and affords the creditor who makes the payment the opportunity to make the property bring enough to pay and leave a surplus after the superior debt is satisfied."

See, also, *Lietka* v. *Hambersky*, 167 Pa.Super. 304 [74 A.2d 698], where the court held a general creditor could satisfy a mechanic's lien on the debtor's property and be subrogated to the rights of the mechanic's lien holder.

It is only respondents' statement in their brief that indicates the estate of Ruth Hitchner, deceased, would become insolvent if the lien here claimed were allowed. The amended complaint here involved does not so allege, nor do the facts alleged so indicate. This, as well as the many other contentions made by defendants, are questions for the trial court to determine on a full hearing after issues joined. Accordingly, we conclude that the trial court erred in sustaining the demurrer without leave to amend and in dismissing the action.

Judgment reversed.

Barnard, P. J., and Mussell, J., concurred.