## Wilson v. Smith.

(Decided March 26, 1926.)

Appeal from Calloway Circuit Court.

1.   Subrogation.—Volunteer loaning money to purchaser with which to pay purchase-money notes without knowledge of vendor did not by subrogation acquire lien similar to that of vendor.

2.   Subrogation—Subrogation Arises Only where Party Pays Debt for which he will be Liable in Event of Default, or where he has Interest to Protect and Advance Money Under Subrogation Agreement.—Subrogation will arise only where party has paid debt for which he will be liable in event of default, or where he has some interest to protect and advances money under subrogation agreement with debtor or creditor, but agreement with debtor alone will not affect rights of creditor.

3.   Subrogation.—One who without legal obligation to do so pays debt is volunteer under doctrine of subrogation.

COLEMAN & LANCASTER for appellant.

E. P. PHILLIPS and LAWRENCE E. COOPER for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

In August, 1919, appellee, Smith, sold C. R. Wilson a farm in Calloway county for $5,000.00, $1,000.00 cash in hand paid, the balance being represented by four notes

of $1,000.00 each, due June 1, 1920; June 1, 1921; June 1, 1922, and June 1, 1923, each bearing six per cent interest from date. Appellant, Lee Wilson, is a brother of the grantee, C. R. Wilson. Smith left the notes for safekeeping at a bank. When the first one became due the payor did not have all the money but he gave Smith a check for $400.00 on the Kirksey bank which was later paid. A little bit later, C. R. Wilson drew his check on the Kirksey Bank in favor of Smith for $350.00, and this check was also paid in due course. The note was then sent by the Calvert Bank to the bank at Kirksey, Kentucky, for collection. At that time the balance due on that note was only $232.22. Later the Kirksey Bank remitted to the Calvert Bank for appellee Smith the balance due upon the first note. The second note was placed with the bank for collection in a somewhat similar manner. This note was also paid to the bank and the funds remitted by the collecting bank to the Calvert Bank for the credit of appellee, Smith. In each case appellee, Smith, indorsed the notes and turned them over to the bank for collection only, as he says. These notes were delivered by the bank to the payee, or to his brother, Lee Wilson, as they were paid.

This suit was brought by Smith, the vendor of the lands and the payee in the notes, against C. R. Wilson, the vendee and maker of the notes, and his brother, Lee Wilson, to recover on the last two notes for $1,000.00 each and to enforce the purchase money lien retained in the deed and notes against the land sold. It is averred in the petition that Lee Wilson claimed some interest in or lien on the lands, and called upon him to set up his claim by answer. He did so, asserting he was the owner by assignment from appellee, Smith, of the first two notes made by C. R. Wilson to appellee, Smith, for the land, and asked to have his notes adjudged of equal dignity with the two notes sued on by Smith, and the lands sold and proceeds applied to the extinguishment of all four notes upon the same basis. A reply made up the issues. When the evidence was taken and the cause submitted the court adjudged appellee, Smith, entitled to recover upon his two notes against C. R. Wilson and adjudged the lands in lien to him for the satisfaction of the notes; and further adjudged his lien prior and superior to all other liens. The court also gave judgment in favor of Lee Wilson against C. R. Wilson for the balance due Lee Wilson upon the first two notes, amounting to about

$1,500.00, and adjudged Lee Wilson a second and subsequent lien on the lands to satisfy his judgment. Complaining of the court's failure to adjudge him a lien upon the lands of equal dignity to that of appellee, Smith, appellant, Lee Wilson, appeals.

It is appellant's insistence that the judgment should have subrogated him to the rights of appellee, Smith, in the notes, at least to the extent of $801.00, the amount paid by appellant upon one of the notes; and further that in equity and good conscience he should be subrogated to all the rights of Smith as to the whole amount paid by him in liquidation of the two notes on the ground that Smith at all times knew that the money which he was receiving on the notes was being furnished by appellant to his brother who applied it on the notes, Smith acquiescing in such payment and in the assignment of the notes by C. R. Wilson to appellant, Lee Wilson. Appellee, Smith, testified that he did not assign or transfer the notes to appellant, Lee Wilson, or know of such assignment or delivery of the notes to Lee Wilson until long after the payment of the two first notes; that Lee Wilson never mentioned the matter to him and there was no agreement or understanding that Lee Wilson should take the notes or have a lien on the lands by reason thereof or be subrogated to the rights of Smith on the lands to the extent of the first two notes. Smith further testified and called other witnesses to prove that he sent the notes to the Kirksey Bank for the purpose of collection only, and neither assigned nor authorized any one to assign for him the notes to appellant or to any one else; that the notes so far as he was concerned were paid in full in the usual course. There is no evidence of substance to the contrary. There is a strong insistence on the part of appellant that appellee, Smith, has not revealed all the facts with respect to the notes and the payment thereof known to him at the time the money was received and at the time he gave his deposition. The evidence, however, supports the finding of the chancellor. In the case of Reid v. Jackson, decided April 3, 1885, by Judge Lewis, it was held that one who loaned to another money with which to pay off a vendor's lien is not thereby substituted to the rights of the vendor, and does not acquire a lien, and further, the sureties of the vendor in the note executed for the money borrowed for this purpose did not acquire a lien by substitution to the rights of the obligee, he having none himself. 6 Ky. Law Rep.

743. Here the evidence seems to prove that C. R. Wilson, borrowed of his brother, appellant, Lee Wilson, money from time to time with which to pay off the notes owing to Smith without the knowledge of Smith that the money was so borrowed, and Smith turned the notes over to the bank for collection and the bank received the money and as the notes were paid, delivered them with the indorsement of Smith thereon to the payor who later turned them over to his brother, Lee Wilson, as collateral for his indebtedness. Under such facts the one receiving the notes thus paid did not, by subrogation, acquire a lien similar to that of the vendor, for he was a mere volunteer so far as appellee, Smith, was concerned, and there was no privity of contract between Lee Wilson and the vendor. The doctrine of subrogation is purely equitable and does not depend upon contract but upon the natural principles of justice. A volunteer in the payment of a debt is never entitled to the advantage of subrogation. Ordinarily the right of subrogation will arise only in case (a) where the party claiming it has advanced money to pay a debt, which in the event of default by the debtor he will be bound to pay; or (b) where he had some interest to protect, and (c), where he advanced money under an agreement, express or implied, made either with the debtor or the creditor that he should be subrogated to the rights and remedies of the creditors. But when this arrangement is made only with the debtor the subrogation extends no further than he has power to grant, and cannot affect the rights of other creditors who are not privy to the arrangement. It was in substance held in the case of Illinois Surety Co. v. Mitchell, 177 Ky. 367, a stranger within the meaning of this rule is not necessarily one who has had nothing to do with the transaction out of which the debt grew. Anyone, being under no legal obligation or liability to pay the debt, is a stranger and if he pays the debt a mere volunteer. And further, one who advances money to pay the debt of another in the absence of agreement, expressed or implied, for subrogation will not be entitled to succeed to the rights and remedies of the creditor so paid unless there is some obligation, interest or right, legal or equitable, on the part of such person in respect of the matter concerning which the advance is made, as otherwise he is a stranger, an intermeddler, to whom the equitable right of subrogation is never accorded. In the

instant case appellant, Lee Wilson, was not obligated in any manner to take up the notes of his brother, C. R. Wilson. He merely volunteered to do so, or at least that is his attitude towards appellee, Smith. As to Smith he was a mere volunteer, no notice having come to Smith of the arrangement between appellant and his brother by which the latter was to receive money with which to discharge the notes. Entertaining this view the chancellor properly adjudged the vendor a superior and prior lien upon the land to secure the last two notes.

Unless appellee Smith gave authority to the bank to assign the notes to appellant, Lee Wilson, or knew the fact of assignment and acquiesced in the assignment by the bank to Wilson, there could have been no subrogation of the appellant, Lee Wilson, to the rights of appellee, Smith, as lien holder on the lands. Smith testifies and proves that he sent the notes to the bank for collection only, and gave no authority whatever for the assignment or transfer of the notes to another. If this be true, appellant, Wilson, obtained no lien by reason of any attempted assignment, but whatever rights he acquired against the land arose out of the privy agreement entered into between him and his brother, C. R. Wilson, at the time the latter borrowed the money from him with which to take up the notes, if he did so do, and in the absence of appellee, Smith.

We are of the opinion that the chancellor correctly adjudged the equities and his finding is affirmed.

Judgment affirmed.