## Federal Land Bank of Louisville v. Marvin, Banking Commissioner, et al.

(Decided March 1, 1929.)

BARRICKMAN & KALTERBACHER and W. L. ROGERS for appellant.

E. H. DAVIS and GILBERT, PICKETT & MATTHEWS for appellees.

OPINION OF THE COURT BY COMMISSIONER TINSLEY—Reversing.

About the year 1922, J. T. Riner conveyed a tract of land in Shelby county to A. C. Youngman. In part consideration thereof Youngman executed to Riner three promissory notes, each for the sum of $4,146, due and payable one, two, and three years after date, bearing interest from date until paid, with the vendor's lien retained in the deed to secure their payment. The first of these notes was paid at its maturity. When the second note became due, Youngman was unable to pay it, and arranged with his son, C. R. Youngman to pay his note for him. C. R. Youngman proposed to Mr. Riner that he would pay that note if Riner would assign the note to him. Riner objected to that proposition, and suggested in lieu thereof that C. R. Youngman loan to his father the sum of money necessary to pay the note and let the father execute to the son the former's note and secure its payment with a second mortgage on the land. His reason therefor was that the price of land had depreciated, and he did not care to have an outstanding lien in the hands of a third person of equal dignity with his vendor's lien which secured the payment of the third note. The parties acted upon Riner's suggestion, and A. C. Youngman executed to C. R. Youngman his note for $4,146, dated March 4, 1924, and, to secure its payment, he, with his wife, executed and delivered to C. R. Youngman a mortgage on the land. This mortgage was admitted to record in the county clerk's office of Shelby county on March 5, 1924.

On September 3, 1926, C. R. Youngman executed to the People's Bank & Trust Company of Shelbyville his note for $1,751.23, due six months thereafter, with interest from maturity until paid, and, to secure its payment, placed with said bank as collateral the note of $4,146 executed to him by A. C. Youngman secured by the second mortgage on the land.

On February 18, 1925, A. C. Youngman borrowed from the appellant the sum of $5,000, and, to secure its payment, executed to it a mortgage on the farm. This mortgage was not due until 30 years after its date, and was to be paid in annual installments during that period. In his application for the loan, A. C. Youngman listed Riner's vendor's lien as the only lien on the land, and stated therein that he intended to discharge that lien with the proceeds of the loan. This application also required A. C. Youngman to list his debts and obligations, and to state whether secured by chattel or other mortgage and the property held as such security. Under this part of his application, A. C. Youngman listed an indebtedness of $1,079 to his son C. R. Youngman, but stated its payment was not secured by mortgage or otherwise. A. C. Youngman was required to furnish appellant an abstract of title, which he did, but the abstractor inadvertently overlooked the second mortgage held by C. R. Youngman. At the time the loan was closed, A. C. Youngman made an affidavit in which he stated that the lien of appellant was the prior and superior lien on the land. This money was sent to an attorney at Shelbyville, who paid to Riner the sum of $4,394.76, the principal and interest on his debt on that day, and the note of A. C. Youngman held by him therefor was delivered by Riner to appellant, and the balance of the loan, after deducting expenses incidental to its procurement, was paid over to A. C. Youngman.

It is clear from the record that appellant, when it made its loan to A. C. Youngman, had no actual knowledge of C. R. Youngman's mortgage, and acted under the belief that its mortgage was the prior and superior lien on the land.

On January 24, 1927, the People's Bank & Trust Company was placed in the hands of the appellee C. E. Marvin, state banking Commissioner, for the purpose of winding up its affairs; on August 16, 1927, he instituted this action to collect the note of $1,751.24 executed to it by C. R. Youngman and to subject the note of $4,146 executed to C. R. Youngman by A. C. Youngman, and to enforce the lien on the farm created by the mortgage which A. C. Youngman and wife had executed to C. R. Youngman; alleging that it was the prior and superior lien thereon.

By its answer and cross-petition appellant set up its lien, alleged that it was prior to C. R. Youngman's lien, and by amendment asked that Riner's vendor's lien be

reinstated and that it be subrogated thereto to the extent of the money paid by it in satisfaction thereof. By his answer and cross-petition C. R. Youngman set up his mortgage lien, asserted its priority, and alleged, further, that the money loaned by him to A. C. Youngman had been paid to Riner in discharge of the secured purchase-money note, and that, if appellant was entitled to subrogation, he, too, was entitled to subrogation, in that the note paid with his money was of equal dignity with the note paid by appellant.

In so far as the banking commissioner is concerned, its debt has been paid. The controversy is now solely between appellant and appellee C. R. Youngman.

Upon final hearing, the lower court adjudged C. R. Youngman's lien superior to that of appellant, and it has appealed. The sole question involved is the priority between the lien of appellant and that of appellee.

Appellant rests its right to priority on the ground that it has, in equity, the right to be subrogated to the vendor's lien of Riner which its funds were used to discharge. Appellee stands upon his right to priority on the ground of notice of his lien afforded by its recordation approximately a year prior to the execution of appellant's mortgage. Appellant's claim of subrogation is based upon the fact that its money paid the Riner debt which was secured by a vendor's lien, and, since it appears that it made a mistake in supposing that its mortgage was prior, it ought, in equity, be restored to the position held by Riner. To this claim appellee answered that Riner's debt was paid and his lien released of record, and a new mortgage taken for a larger amount, and that appellant, being a mere volunteer, is not entitled to subrogation.

Concerning the doctrine of subrogation and when it may be invoked, 25 R. C. L. 1313, lays down these principles: "The doctrine of subrogation . . . does not owe its origin to statute or custom, but it is a creature of courts of equity, having for its basis the doing of complete and perfect justice between the parties without regard to form. It is a doctrine therefore which will be applied or not according to the dictates of equity and good conscience, and considerations of public policy, and will be allowed in all cases where the equities of the case demand it. It rests upon the maxim that no one shall be enriched by another's loss, and may be invoked wherever justice demands its application, in opposition to the

technical rules of law which liberate securities with the extinguishment of the original debt. The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principles of justice.''

In the recent case of Louisville Joint Stock Land Bank v. Bank of Pembroke, 225 Ky. 375, 9 S. W. (2d) 113 a case involving the precise question presented by this case, we said:

> "Subrogation is a creature of equity, and rests upon principles of natural justice. Without attempting a comprehensive classification of cases in which the doctrine of subrogation may be applied, it is generally held that the right of subrogation will arise where the party claiming it has advanced money to pay a debt, which, in the event of default by the debtor, he would be bound to pay; or where the one making the payment had some interest to protect; or where the money advanced to pay the debt was under an agreement with the debtor, or the creditor, express or implied, that he should be subrogated to the rights and remedies of the creditor. Illinois Surety Co. v. Mitchell, 177 Ky. 367, 197 S. W. 844, L. R. A. 1918A, 931; Probst v. Wigginton, 213 Ky. 610, 281 S. W. 834.''

The transaction by the appellant and A. C. Youngman was substantially within the principles stated above. Appellant undertook, at A. C. Youngman's request, and upon his written application therefor, to loan him $5,000 with which to pay the balance of purchase money secured by a vendor's lien. The money was provided, and $4,394.76 thereof was paid by appellant, at A. C. Youngman's direction, to Riner, who surrendered Youngman's note to appellant and released his vendor's lien. In this appellant was not a volunteer. It was acting at the request of A. C. Youngman and with the concurrence of the creditor, Riner. In 25 R. C. L. 1326, this principle is stated: "One is not a volunteer in a transaction where he has paid the money at the request of the person whose liability he discharges. As applicable to the right of subrogation to a vendor's lien, the general doctrine has been asserted and applied that a person who may be compelled to pay a debt, or the protection of whose property or interest requires that he pay it, is not a mere volunteer;

neither is one who pays a debt, or advances money for the purpose, at the request of the debtor.''

In line with that principle, in the case of Ft. Jefferson Improvement Co. v. Dupoyster, 112 Ky. 792, 66 S. W. 1048, 2 L. R. A. (N. S.) 263, we said:

"The doctrine of subrogation is one of equity, to promote justice, and it may or may not arise from a contract. The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principles of justice. Where a person furnishes money to pay the debt of another, if it is equitable that he should be substituted for the creditor it will be done. One is not a volunteer in a transaction where he has paid the money at the request of the person whose liability he discharges. Neither can one be regarded as a volunteer who pays money to relieve his own property therefor, for which someone else is liable.''

And, quoting from Pomeroy's Eq. Jur., sec. 1211, the opinion continues:

"This equitable result follows, although no actual assignment, written or verbal, accompanied the payment, and the securities themselves were not delivered over to the person making payment, and even though a receipt was given, speaking of the mortgage debt as being fully paid, and sometimes even though the mortgage itself was actually discharged and satisfied of record. This equitable doctrine, which is a particular application of the broad principle of subrogation, is enforced whenever the person making the payment stands in such relations to the premises or to the other parties that his interests, recognized either by law or equity, can only be fully protected and maintained by regarding the transaction as an assignment to him, and the lien of the mortgage as being kept alive, either wholly or in part, for his security and benefit.''

To the same effect are the cases of Louisville Joint Stock Land Bank v. Bank of Pembroke, supra, and Commonwealth of Kentucky ex rel. v. Federal Land Bank, 226 Ky. 628, 11 S. W. (2d) 698.

The cases of Wilson v. Smith, 213 Ky. 836, 281 S. W. 1008; Jones v. Louisville Tobacco Warehouse Co., 135 Ky. 824, 121 S. W. 633, 123 S. W. 307, and Illinois Surety

Co. v. Mitchell, 177 Ky. 367, 197 S. W. 844, L. R. A. 1918A, 931, relied on by appellee to defeat appellant's right to subrogation, are not, as claimed by appellee, out of harmony with the above cases.

In the Wilson v. Smith Case the notes for which the appellant there sought to be subrogated to the vendor's lien of the payee had been sent by the payee through banking channels to the maker for collection, and appellant furnished to the maker money with which to pay them, whereupon the notes were delivered by the bank to appellant. The payee knew nothing of this arrangement, and supposed the notes had been paid by the maker. In denying subrogation to appellant who thus furnished the money, we said:

> "Unless appellee Smith gave authority to the bank to assign the notes to appellant, Lee Wilson, or knew the fact of assignment and acquiesced in the assignment by the bank to Wilson, there could have been no subrogation. . . . Smith testifies and proves that he sent the notes to the bank for collection only, and gave no authority . . . for the assignment or transfer of the notes to another."

In the present case, appellant paid the money directly to Riner (who occupied the same relation as Smith in the Wilson v. Smith Case), and Riner turned over to it the purchase-money note.

The Jones v. Louisville Tobacco Warehouse Co. Case came to this court from a judgment sustaining a demurrer to the plaintiff's reply. The doctrine of subrogation was referred to only in the following observation made by the court in its opinion:

> "It is alleged in the petition that Mrs. Jones when she paid Mrs. Noel her part of the rent became subrogated to her rights. But no facts are alleged showing a right of subrogation. One who pays a debt for another voluntarily is not ordinarily subrogated to the rights of the creditor. Subrogation is only allowed where there is some equitable reason for it. The allegation that the plaintiff was subrogated to the rights of Mrs. Noel is only a conclusion of the pleader."

The Illinois Surety Co. v. Mitchell Case simply subrogated a surety to the rights of its principal in a fund arising from retained percentages under the contract for the completion of which the surety company was bound.

But appellee further insists that, if he is not entitled to priority, inasmuch as the money which he furnished to A. C. Youngman was applied to the payment of a purchase-money note due to Riner, which was secured by the same vendor's lien as secured the note paid by appellant, he is as much entitled to subrogation as is appellant; and that he is entitled to share, pro rata, with appellant in the distribution of the proceeds of sale of the land. The answer to this contention is that Riner, the creditor, declined to permit appellee to occupy such relation. He refused to permit appellee to pay that note and take an assignment of it, with the result that appellee loaned to A. C. Youngman the $4,146 and took from him a mortgage on the land second and inferior to Riner's lien. Appellee voluntarily placed himself, as regards the money he advanced, in a secondary position as to a lien—secondary to Riner and, in consequence, secondary to appellant. In the case of Bormann v. Hatfield, 96 Wash. 270, 164 P. 921, L. R. A. 1917E, 1052, cited in Louisville Joint Stock Land Bank v. Bank of Pembroke, supra, it is said:

> "A subsequent mortgagee, who becomes such anterior to the discharge of a prior mortgage, cannot, with any show of reason or justice, claim to be injured by the setting aside of the subsequent release and restoring the lien of the prior mortgage. He is in no way prejudiced, but is left to enjoy exactly what he expected to get when he accepted the second mortgage."

From what has been said and the authorities cited it follows that appellant is entitled to be subrogated to the lien of Riner to the extent its money was applied on the original debt secured by the vendor's lien, and the court erred in adjudging a prior lien to appellee.

The judgment is reversed, with directions to enter a decree in accordance with this opinion.