THE FEDERAL LAND BANK OF COLUMBIA, a corporation, *Appellant*, v. BERTHA GODWIN, LORENA JONES, and WILLIE JONES, her husband, RUTH HUNTER and DEWEY HUNTER, her husband, MRS. ADA GODWIN, ELSIE GODWIN, a minor, PERRY NATIONAL FARM LOAN ASSOCIATION, and T. G. ALDERMAN, *Appellees*.

136 So. 513.
145 So. 883.
Opinion filed August 7, 1931.
Petition for rehearing denied January 9, 1933.

538

W. B. *Davis,* for Appellant;

L. W. *Blanton,* for Appellees.

DAVIS, Commissioner:—This case is here for the purpose of having a review of an order sustaining a demurrer to a bill for the foreclosure of a mortgage.

The bill of complaint among other things alleges in substance and effect that on the 13th day of July, 1926, W. B. Godwin and wife executed a mortgage upon certain lands in Taylor County to the First National Bank of Perry, to secure the sum of $1200.00; that on the 6th day of September, 1926, the said Godwin and wife purchased a tract of land and borrowed from T. G. Alderman the sum of $1100.00 to pay for said land and for making improvements thereon and gave to Alderman a mortgage which covered, with the exception of one "forty" the land embraced in the mortgage to the bank; that on the 30th day of December, 1927, the said Godwin and wife executed a mortgage to the said bank upon the same lands to secure the payment of $1631.00 in the renewal, as it is alleged, of the mortgage dated September 6, 1926; that on the 28th of August, 1928, the said Godwin and wife executed to complainant, The Federal Land Bank of Columbia, their mortgage to secure the payment of $1600.00 and interest thereon to be paid on an amortization plan in 35 annual installments, with a provision therein for accelerating the maturity of deferred payments upon default being made by the mortgagors in making the payment of any installment of prin-

cipal or interest; that prior to securing the loan from complainant, the said Godwin delivered to complainant a written application of himself and wife for a loan for the following purposes:

> . "Two hundred dollars to repair houses; two hundred dollars to buy wire fencing; one thousand, five hundred dollars to pay mortgage to the First National Bank; one hundred dollars to pay for stock in National Farm Loan Association;"

that the mortgage to the said Bank

> "was all the incumbrances, all the mortgages, all liens against the land offered for security and also all accounts or amounts due on account of purchase money, notes or contracts covering purchase of said land; that it was the desire and proper intention of your orator to secure and obtain from the said W.. B. Godwin all the interest and all the right, title, claim or otherwise that the said W. B. Godwin had in or to the said land or any part thereof, and that your orator took the mortgage aforesaid on the land above described from the. said Warren or W. B. Godwin for the purpose of securing the said interest, the said right, the said title, the said claim of the said W. B. Godwin and of all other persons, that a copy of the instrument executed by the said W. B. Godwin is hereto attached and marked as your orator's exhibit 5, and prayed to be taken and considered as this your orator's bill of complaint."

That though the mortgage to the said Alderman was recorded, it was not shown on an abstract that was "made and executed to the complainant; that the said sum of $1600.00 was not delivered by the complainant to Godwin, but was turned over to the agent of complainant for him to pay said bank so much of it as was due the said bank by the said Godwin; that the said sum of $1600.00 was paid to the said bank, it being approximately sufficient to pay all that was due said bank by the said Godwin, "for the purpose of obtaining and

securing" from said bank the mortgage that was then held by it in order for complainant's mortgage to become a first lien on the land; that the said Godwin had defaulted in his payments and that complainant had exercised its option to declare the entire amount due and payable; that the mortgages to said First National Bank of Perry have not been cancelled of record; that the mortgage to Alderman has been paid as complainant is advised and believes, but that if it has not been paid, the complainant has been subrogated to the rights of said bank to the security held by it. Complainant prays for the foreclosure of its said mortgage, or in the event the Court finds it necessary that the complainant be subrogated to the rights of the said First National Bank of Perry, that the mortgage of July 13th, 1926, to the First National Bank of Perry be foreclosed. To the bill of complaint is attached as a part thereof a copy of the application made by the said Godwin to the complainant for a loan of $2000.00 wherein he agrees to take a smaller amount as the complainant in its discretion may determine. In this application he lists the mortgage to the First National Bank of Perry at $1500.00. The defendant demurred to the whole bill.

It is an established rule here that a general demurrer addressed to the entire bill should be overruled if there is any equity in the allegations of the bill (Craft v. Craft, 74 Fla. 262, 76 So. 772; Downing v. Carlton, 76 Fla. 490, 80 So. 57; Leavine vs. Belt Automobile Indemnity Association, 88 Fla. 553, 102 So. 768; also Stokes v. Victory Land Co., 99 Fla. 795, 128 So. 408, and cases there cited), and that such demurrer operates as an admission of all the allegations in the bill which are well pleaded. Reid v. Barry, 93 Fla. 849, 112 So. 946; Amos v. Gunn, 84 Fla. 285, 94 So. 615; Hotel Halcyon Corp. v. Miami Real Estate Co., 89 Fla. 156, 103 So. 403; Rawls v. City of Miami,

82 Fla. 65, 89 So. 351; Phifer v. Abbott, 73 Fla. 402, 74 So. 488; Holt v. DeLoach-Edwards Co., 56 Fla. 902, 48 So. 1039.

The bill in all essential requirements is sufficient as a basis for the foreclosure of the mortgage held by the complainant. If on the coming in of an answer and the taking of testimony it should appear that Alderman has an unsatisfied lien on the property superior to the lien of complainant, the contention of complainant that it should be subrogated to the rights and remedies of the First National Bank of Perry can be taken care of in the final decree.

The bill being not without equity the order sustaining the demurrer thereto is hereby reversed.

Inasmuch as this cause will have to be remanded to the lower court for further proceedings, and the principal point of contention between the parties involves the right of the complainant, The Federal Land Bank, as subrogee, to foreclose the mortgage of July 13, 1926, to the First National Bank of Perry, it is appropriate for us to settle that controversy at this time.

We quote with approval from 19 R. C. L. 452, the following:

"It is unquestionable law that a mere change of securities of equal dignity for a debt is not a novation of that debt or a payment or release thereof per se. Hence a second mortgage or deed of trust on the same property does not alone discharge the lien of the first. On the contrary, the authorities uniformly hold that whether the taking of the second mortgage amounts to an extinguishment of the first mortgage is one of intention between the parties. Crisman vs. Lanterman, 149 Cal. 647, 87 Pac. 89, 117 Am. St. Rep. 167; Farkas v. Albany Third Nat. Bank, 133 Ga. 755, 66 S. E. 926, 26 L. R. A. (N. S.) 496; Rossbach v. Micks, 89 Neb. 821, 132 N. W. 526, 42 L. R. A. (N. S.) 444; Kern v. A. P. Hotaling Co., 27 Ore. 205, 40 Pac.

168, 50 Am. St. Rep. 710; Austin v. Bailey, 64 Vt. 367, 24 Atl. 245, 33 Am. St. Rep. 932; Atkinson v. Plum, 50 W. Va. 104, 40 S. E. 587, 58 L. R. A. 788. See also Notes; 85 Am. Dec. 470; 10 L. R. A. 537; 35 L. R. A. (N. S.) 86. See also Cheves v. First National Bank, 79 Fla. 34, 83 So. 870.''

A new mortgage in renewal of an old one takes precedence to the extent of the old mortgage debt over an intervening lien upon the property covered by the mortgage. Young v. Shaner, 73 Ia. 555, 35 N. W. 629, 5 A. S. R. 701 and note.

The appellant here takes the position in effect that when it paid to the First National Bank of Perry out of the funds borrowed from it by Godwin, the amount claimed by it in pursuance of an agreement with Godwin, that the appellant was to have a first lien upon the property for the payment of the sum loaned, the appellant is entitled, as against Alderman, to be treated as the assignee of the first mortgage to the First National Bank of Perry, it being necessary to do so to effectuate the agreement of Godwin with the appellant, and to prevent the junior mortgage of Alderman from being raised accidentally to the dignity of a first lien, contrary to the intention of the parties.

The weight of authority, perhaps, supports such contention. See Federal Land Bank v. Marvin, 228 Ky. 242, 14 S. W. (2d) 762, 70 A. L. R. 1392, and splendid note; Enterprise Bank v. Federal Land Bank, 139 S. C. 397, 138 S. E. 146; Cumberland Bldg. etc. Ass'n v. Sparks, 111 Fed. 647; Home Sav. Bank v. Bierstadt, 168 Ill. 618, 48 N. E. 161, 61 Am. St. Rep. 146; Tradesmen's Bldg. etc. Assn. v. Thompson, 32 N. J. Eq. 133; Wilton v. Mayberry, 75 Wis. 191, 17 A. S. R. 193, and note; Hill v. Ritchie, 90 Vt. 318, 98 Atl. 497, L. R. A. 1917A 731; Southern Cotton Oil Co. v. Napoleon Co., 108 Ark. 555, 158 S. W. 1082, 46 L. R. A. (N. S.) 1049; Emmert v.

Thompson, 49 Minn. 386, 52 N. W. 31, 32 Am. St. Rep. 566.

Appellees confidently rely upon the decision of this Court in Boley v. Daniel, 72 Fla. 121, 72 So. 644, L. R. A. 1917A 734, to sustain the order appealed from. In that case, the right to subrogation was denied to one (Daniel) who advanced money to a mortgagor, Brooks by name, to dischage a prior mortgage as against a recorded second mortgage. In its treatment of this case the Court said:

"As Lee Daniel was under no obligation whatever to pay the note that was secured by the first mortgage on the property given by Waters to Brooks, and had no interest in or relation to the property, there can be no *legal* subrogation of Daniel to the rights of the holder of the first note and mortgage. If there can be a subrogation, it must be a *conventional* subrogation and based on an agreement of the parties that the first mortgage lien shall continue for the benefit of Daniel. An agreement between Daniel, 'and the mortgagors that he was to have a first lien on the property covered by said mortgage,' is not necessarily an agreement that the first mortgage lien shall remain in force for the benefit of Daniel. It is true the money loaned by Daniel was obtained and used 'for the purpose of paying up the mortgage' which was superior to Boley's mortgage; but as Daniel 'had no actual notice or knowledge' of the second or Boley mortgage, he could not have contracted for a continuance of the first mortgage lien as having reference to Boley's mortgage. The agreement between Boley 'and the mortgagors that he was to have a first lien on the property covered by said mortgage,' was consistent with Daniel's 'belief that there were no other liens on the property,' and consistent with Daniel's action, under such belief when he 'caused to be satisfied on record the first mortgage.' If Daniel had known of the Boley mortgage the cancellation of the record of the first mortgage would most probably have contained some reference to a reservation as against the

Boley mortgage. Besides this the agreement as to 'a first lien on the property covered by' said mortgage, 'relates to all the property in the mortgage, some of which,' though a small part, was not in the first mortgage. Daniel had constructive notice by the record of Boley's mortgage which is binding on Daniel.

"The fact that a subsequent mortgagee's lien will occupy the same relation to the property, if one who has advanced money, secured by a mortgage on the real estate, to pay off the prior mortgage, is subrogated to the rights of the holder of such first mortgage, affords no reason why equity should permit the party so advancing the money to be subrogated to the rights of the holder of the first mortgage.

"When a first mortgage lien existing against real estate is paid off, the lien of a second mortgage thereon becomes at once, by operation of law, a first lien on the property; and this first lien, and the right to enforce it as such are vested rights."

The conclusion of the Court is epitomized as follows:

"Being under no duty, legal or otherwise, to pay the first mortgage debt, Daniel is not entitled to a legal subrogation to the prior right that had existed in favor of the first mortgage holder. And not having shown an agreement that the lien of the first mortgage should be kept alive for his benefit, but it appearing merely that the agreement was for 'a first lien on the property covered by' the last mortgage, which included other property besides that covered by the first mortgage, and that Daniel 'in the belief that there were no other liens on the property caused to be satisfied on record the first mortgage,' there is no clear showing of a right to a conventional subrogation."

But it is contended by appellant that the Court in Forman & Co. v. First National Bank of Quincy, 76 Fla. 48, 79 So. 742, has, in effect, departed from the rule laid down in Boley v. Daniel, supra. While it is said in Forman v. First National Bank of Quincy that "The modern authorities agree that the doctrine of subrogation has been steadily expanding and growing in import-

ance and extent in its application to various subjects and classes of persons and that the agreement out of which conventional subrogation arises and upon which it rests may be express or implied,'' and while much may be said in favor of the contention that under the facts in this case there was an implied agreement that the mortgage to the First National Bank of Perry should be kept alive, the fact remains that the decision in the Boley-Daniel Case was not overruled or modified by the decision in Forman v. First National Bank of Quincy, supra, and that the rule stated in the former case is still in force in this State.

The order is reversed and the cause remanded for further proceedings in accordance with law.

Per Curiam.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the order of the Court below should be, and the same is hereby reversed and the cause is remanded for further proceedings in accordance with law.

BUFORD, C.J., AND WHITFIELD, BROWN AND DAVIS, J.J., concur.

ELLIS AND TERRELL, J.J., not participating.

---

ON PETITION FOR REHEARING.

*W. B. Davis, Waller & Pepper* and *James H. Finch,* for Appellant;

*L. W. Blanton,* for Appellee.

TERRELL, J.—The opinion filed in this cause August 7, 1931, quotes the bill of complaint as alleging that on July 13, 1926, W. B. Godwin and wife executed a mortgage to the First National Bank of Perry to secure the sum of $1200.00 and that on September 6, 1926, the same mortgagors executed a mortgage to F. G. Alderman to

secure the sum of $1100.00, the latter mortgage describing the same lands as the former one except forty acres. The bill also alleges that on December 30, 1927, Godwin and wife executed a second mortgage to the First National Bank of Perry to secure the renewal or extension of the note and mortgage of July 13, 1926, said renewal mortgage covering the same lands as described in the first mortgage and being in the amount of $1631.00. The bill further alleges that on August 28, 1928, Godwin and wife executed to the Federal Land Bank of Columbia their mortgage in the sum of $1600.00 to be paid on the amortization plan in thirty-five annual installments, with provision for acceleration of maturity in the event of failure to meet deferred payments promptly.

This suit was brought by appellant as complainant below to foreclose the mortgage of August 28, 1928. The bill prays that the mortgage to the First National Bank of Perry dated July 13, 1926, be foreclosed and that complainant, if necessary, be subrogated to the rights of said bank. On this petition for rehearing, the main question presented is whether or not under the facts as stated the right of subrogation to the place of the First National Bank of Perry exists in favor of complainant as against Alderman, the holder of the intervening mortgage.

The mortgage to Alderman having been executed September 6, 1926, and the mortgage to the First National Bank of Perry having been first executed July 13, 1926, and renewed December 30, 1927, did the Alderman mortgage, as the result of such renewal, become a first mortgage or did the mortgage of the First National Bank of Perry still retain its position as a first mortgage?

The rule determining whether a renewal or substitution mortgage retains priority over intervening mortgages and judgments is stated in 5 Thompson on Real Property, Sec. 4263, page 353, to be as follows:

"Whether a second mortgage between the same parties and upon the same lands given upon the release or cancellation of the first is taken merely as a renewal or in payment and satisfaction of the first mortgage depends largely upon the intention of the parties. Where the intention of the parties is simply to make a renewal and extension of the old debt, and the satisfaction of the old mortgage and the taking of a new one are practically simultaneous acts or parts of the same transaction, the taking of the second mortgage is not considered an extinguishment of the first, but a renewal thereof, and does not give priority to intervening judgment or mortgage creditors of the mortgagor, especially where the renewal or substitution is made in good faith, without notice of the intervening lien and without any intention to release the original lien. The rule, however, does not apply where there is evidence of an intention to waive the lien of the prior mortgage, or to effect a payment thereof, neither is the rule applicable where the new mortgage is given to a different person from whom the debtor borrowed the money to pay off the old mortgage, nor where the new mortgage secures a distinct debt from the old, or an additional debt, the satisfaction in such cases operating as a complete discharge of the first mortgage."

The record discloses that the mortgage and note of December 30, 1927, was given as a renewal or extension of the mortgage and note of July 13, 1926, and was so intended by the parties thereto. Both mortgages were between the same parties, covered the same lands, were for the same amounts except as to accrued interest and cost which were included in the new mortgage and the giving of the new and the attempted discharge or satisfaction of the old mortgage, were parts of the same transaction. Under such circumstances the renewal mortgage of December 30, 1927, was well within the rule as above announced and retained its position of priority over the Alderman mortgage.

Since the renewal mortgage retains its position of priority over the Alderman mortgage and this suit was brought to foreclose the mortgage of August 28, 1928, should the appellant be subrogated to the rights of the First National Bank of Perry as against Alderman, the holder of the second or intervening mortgage?

The doctrine of subrogation does not arise from statute or custom, but is peculiarly a creation of equity, grounded on the proposition of doing justice to the parties without regard to form. It rests on the maxim that no one shall be enriched by another's loss and may be invoked when and where justice demands its application. It has been greatly expanded in this country, may be employed to relieve from fraud or mistake, but is not allowed if it works any injustice to the rights of others. 25 R. C. L. Sec. 2.

Bottomed on this premise, it follows that under our system of jurisprudence there is no limit to the circumstances that may arise in which this doctrine may be applied. In Forman et al. vs. First National Bank of Quincy et al., 76 Fla. 48, 79 So. 742, we held that the doctrine of subrogation has been steadily expanding and growing in importance and extent in its application to various subjects and classes of persons and that the agreement out of which it arises and upon which it rests may be express or implied.

In the case at bar the appellant as complainant seeks to foreclose the mortgage of August 28, 1928. When Godwin, the mortgagor, applied to appellant for the loan secured by this mortgage, he listed the mortgage of December 30, 1927, at $1500.00 and requested the loan of $2000.00 for the following purposes:

$200.00 to repair houses.

$200.00 to buy wire fencing.

$1500.00 to pay mortgage to First National Bank of Perry.

$100.00 to pay for stock in National Farm & Loan Association.

He also asserted in his written application for the loan that there were no other mortgages or liens against the lands described in the mortgage, that all notes and claims for purchase of lands had been paid and that the said mortgage was given for the purpose of securing appellant with all right, title or claim the mortgagor had in and to the said lands. It is shown that sufficient of the loan to pay the mortgage to the First National Bank of Perry was paid directly to it and that complainant secured an abstract of title to said lands but that it showed no record of the mortgage held by Alderman. Appellant in other words contemplated and made every effort in reason to locate and quiet all claims to said lands and the mortgagor covenanted with appellants that the note and mortgage, when recorded, should be a first lien as required by the Federal Farm Loan Association.

Under this state of facts we think the appellant should be subrogated to the rights of the First National Bank of Perry. The record conclusively shows that the loan would not have been made except for assurance that this would be done and such was the intention of the parties.

The rule is epidemic that one who makes a loan to discharge a first mortgage, pursuant to an agreement with the mortgagor that he shall have a first mortgage on the same lands to secure it, the lender will be subrogated to the rights of the first mortgagee notwithstanding there is at the same time a second outstanding mortgage of which he (the lender), is ignorant. Wilkins vs. Gibson, 113 Ga. 31, 38 S. E. 374; Home Savings Bank vs. Bierstadt, 168 Ill. 618, 48 N. E. 161, 25 R. C. L. 1339-40.

In representing that there were no other incumbrances on the lands mortgaged, Godwin perpetrated a fraud on

appellant. As a result of this fraud and failure to locate any adverse claimant to said lands, appellant advanced money to retire Godwin's first mortgage on the express agreement that it (appellant) was to have a first lien on said lands to secure repayment of the sum loaned. It would be grossly inequitable under such circumstances to hold that the appellant was not entitled, as against the holder of the second mortgage, to be treated as the assignee of the first mortgage and thus by chance or fortune raise the second mortgage to the dignity of the first contrary to the intention of the parties.

The application of this rule works common justice to all, it prevents injury to appellant who furnished the money to pay off the first mortgage in ignorance of the second, it gives appellant the benefit of its payment, carries out the intention of the parties, and leaves Alderman, the holder of the junior mortgage, in his original position. One of the first tests determining the application of this rule is whether or not subrogation to the place of the prior or retired lien puts the holder of the second lien in any worse position than if the prior lien had not been discharged. London & N. W. American Co. vs. Tracy, 58 Minn. 201, 59 N. W. 1001.

But appellees contend that the instant case is ruled by the decision of this court in Boley vs. Daniel, 72 Fla. 121, 72 So. 644, L. R. A. 1917 A, 734. The latter case turned on the fact that Daniel was a volunteer, did not examine the record, was not the victim of false representations, was under no duty to pay the first mortgage and exercised no care or effort to make his mortgage a first lien. The position of the appellant in the case at bar is quite different. It was not a volunteer, it took every precaution possible to loan on a clear title, was only prevented from doing so by the fraud of the mortgagor and

had a contract which amounted to the right of subrogation.

In so far as the opinion of August 7, 1931, is in conflict with this, it is overruled. Otherwise it is affirmed.

Rehearing denied.

BUFORD, C,J., AND WHITFIELD, BROWN AND DAVIS, J.J., concur.