[Civ. No. 17903. First Dist., Div. One. Jan. 27, 1959.]

EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN (a Corporation), Respondent, v. PACIFIC INDEMNITY COMPANY (a Corporation), Appellant.

Boyd & Taylor, Frederic G. Nave and Boyd, Taylor, Nave & Flageollet for Appellant.

Connolly & Farbstein for Respondent.

BRAY, J.—Defendant Pacific Indemnity Company appeals from a judgment in favor of plaintiff for $17,500 and $446.78 attorneys' fees, both amounts to bear interest from specified dates. Defendant purports to appeal from the order denying new trial.*

### Questions Presented

Is plaintiff entitled to recover under the doctrine of subrogation? Corollary thereto is the question of whether defendant's policy covered the accident and plaintiff's did not.

### Facts

The action grows out of an injury sustained by one Borges who was employed as a truck driver by McLaughlin Draying Company. The truck and driver were rented to Guy F. Atkinson Company, a corporation. His employer instructed him to take one of its trucks to the Southern Pacific railroad spur track at Folsom to be loaded with steel piling. He was to report to Atkinson's men and take orders from them. Borges parked the truck adjacent to a railroad gondola car in the Southern Pacific railroad yard at Folsom. The truck was being loaded with steel sheet pilings, which were hoisted from the gondola car to the truck by a crane owned by George Pollock Company and operated by a Pollock employee. The

---

*As this order is not appealable, the purported appeal must be dismissed.

crane and operator were rented to Atkinson. In the gondola car were employees of Atkinson. Loading of the truck commenced with those employees attaching a single piling to the crane boom hooks. They then signalled the crane operator, who transported the piling over to the Borges truck, where it was placed at the direction of Borges and two Atkinson men who were on the truck. After 12 pilings had been loaded, the Atkinson men attached a piling to the crane hooks. In some manner an additional piling became wedged into the secured piling. Borges called the crane operator's attention to this. The latter attempted to dislodge the extra piling by banging it within the gondola car. Atkinson men signalled the operator to lift the load from the car. The operator lifted it, moved it over to the bed of the truck and lowered it into the truck, under the direction of Borges and the Atkinson men. When about 6 inches from the bed of the truck, the wedged piling broke loose from the secured piling, bounced off the truck bed and struck Borges, severely injuring him. Borges brought suit in April, 1953, against both companies and the individual employees who were concerned in the loading of the truck, for damages in the sum of $105,000 for the injuries suffered. Plaintiff had issued to Atkinson a comprehensive liability insurance policy for risks other than automobile. Defendant also had issued a policy to Atkinson covering automobile risks. Plaintiff received notice of the action May 26, 1953, and after investigation, tendered to defendant the defense of Atkinson. This offer was declined by defendant. On April 14, 1954, plaintiff again tendered the defense to defendant, which defendant refused. One Rhodes, foreman of Atkinson, was a defendant in the Borges action. Plaintiff tendered to McLaughlin and its automobile insurer, Travelers Insurance Company, the defense of Rhodes, which tender was accepted. Travelers also accepted the defense of Atkinson tendered by plaintiff. (Pollock was insured under a Travelers comprehensive policy.) Before trial and after considerable negotiations for settlement the Borges action was settled for $50,000, Travelers paying $15,000 under its policy with McLaughlin, and $17,500 under its policy with Pollock. Plaintiff on behalf of Atkinson contributed $17,500. Defendant previously had been notified to undertake Atkinson's defense and now was notified of the settlement negotiations, and refused to participate in either. Plaintiff then brought this action to recover the amount it had contributed to the

Borges settlement, claiming to be subrogated to Atkinson's rights under defendant's policy.

The trial court found that the accident was the result of the negligence of Atkinson employees in loading the truck hired by Atkinson from McLaughlin, that Pollock and McLaughlin were not independent contractors in relation to Atkinson in the loading of the truck, that defendant's policy specifically covered loading of the truck with coverage extended to any company legally responsible for the use of a hired truck, that the premises where the accident occurred were not owned, rented or controlled by Atkinson, that plaintiff's policy specifically excluded automobile accidents including the loading and unloading thereof, that plaintiff was entitled to recover the sum paid in settlement as it succeeded to all rights of Atkinson under the equitable doctrine of subrogation.

### PLAINTIFF'S POLICY

It covered Atkinson only for "Construction of Folsom Power Plant . . . and elsewhere in connection with said project." The steel pilings being loaded on the Atkinson truck at the time of the accident were for this project. The following provisions of the policy are pertinent here:

"I. Coverage A—Bodily Injury Liability—Automobile Included. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law or by written contract for damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person."

Included as an insured is "any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured, or with his permission . . ." "Automobile" includes a hired automobile used under contract or loaned to the named insured. But a power crane is excluded. Endorsement Number 1 provides:

"It is agreed that this policy does not apply under coverage A, except with respect to operations performed by independent contractors, to automobiles while away from premises owned, rented or controlled by the named insured or the ways immediately adjoining, or the loading or unloading thereof."

It is clear from an examination of the policy and the circumstances of the accident that, contrary to defendant's con-

tention, plaintiff's policy did not cover the accident, and hence plaintiff's payment of a portion of Borges' damages was not required by the direct terms of the policy. It expressly excluded coverage of Atkinson's automobiles (under the definition of the policy the truck is an automobile) while away from premises owned, rented or controlled by the named insured, including the loading and unloading thereof on such premises. The accident took place on premises neither owned, rented nor controlled by Atkinson. Nor did the exception "except with respect to operations performed by independent contractors" apply. The court found and the evidence supported the finding, that Borges' injuries were caused by Atkinson's negligence, and that Pollock and McLaughlin were not "independent contractors" in relation to the loading of the truck.

## Defendant's Policy

Under it defendant agreed to insure Atkinson:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person."

By Endorsement Number 1, "Insured" was defined: "The unqualified word 'insured' includes the named insured and also includes (1) under coverages A and C, any partner, executive officer, director or stockholder thereof while acting within the scope of his duties as such, and (2) under coverages A and B, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured . . .'.''

The word "automobile" in the policy includes: "(2) Hired Automobile—an automobile used under contract in behalf of, or loaned to, the named insured provided such automobile is not owned by or registered in the name of (a) the named insured . . ." But a power crane was excluded from the definition, and "use" of an automobile included the loading or unloading thereof.

Thus, it clearly appears that defendant was liable to Atkinson under the policy, as the truck (defined as an automobile in the policy) was hired by Atkinson and was being used by Borges, its employee, in the scope of his employment, and that the accident occurred while the truck was being loaded.

In the definition portion of the policy it is stated that "power crane" is not included in the words "motor vehicles" except when being towed. Based upon this fact plus the fact that the operation of the crane was involved in the accident and that Travelers (whose policy did cover the Pollock crane) by paying $17,500 toward the settlement, indirectly recognized that the crane was at fault in the accident, defendant contends that its policy did not apply.

In the exclusions portions of the policy power cranes are not mentioned. The only reasonable interpretation of the policy which specifically included loading accidents, is that while the crane is not insured, accidents in loading automobiles by whatever means, including cranes, are included. As pointed out in *Bituminous Cas. Corp.* v. *Travelers Ins. Co.*, 122 F.Supp. 197, a truck is not provided with a self-loading device and the only way it could be loaded would be by hand or some outside instrumentality.

## SUBROGATION

Defendant being bound under its policy to indemnify and defend Atkinson and plaintiff not being bound under its policy so to do, was the payment made by plaintiff for Atkinson's protection one entitling it to subrogation to Atkinson's rights against defendant, or was plaintiff a mere volunteer not entitled to subrogation? ■ Subrogation is an equitable doctrine, recognized also at law and not depending upon contractual relationships, which is administered so as to secure justice without regard to form. (23 Cal.Jur. 917.) ■ It applies in all cases in which one party, not a volunteer, pays a debt for which another is primarily liable, which in equity and good conscience should have been paid by the latter party. ■ The requisites of subrogation are "(1) Payment must have been made by the subrogee to protect his own interest. (2) The subrogee must not have acted as a volunteer. (3) The debt paid must be one for which the subrogee was not primarily liable. (4) The entire debt must have been paid. (5) Subrogation must not work any injustice to the rights of others." (*Grant* v. *de Otte* (1954), 122 Cal.App.2d 724, 728 [265 P.2d 952].) ■ Subrogation extends to those parties who pay in the performance of a legal duty by contract or rules of law, who pay in order to protect their own rights or interest, and whose payments are favored by public policy. (*Fresno Investment Co.* v. *Brandon* (1926), 79 Cal. App. 387, 389 [249 P. 548].)

There can be no question but that requisites (3), (4) and (5) are met in this case. While the meeting of requisites (1) and (2) is not so clearly shown as the others, nevertheless the evidence fully justifies a finding that they are met. Even though there was no legal obligation on plaintiff to make the payment it nevertheless had an interest to protect in making it. That interest arose from the fact that there was a dispute between it and defendant as to which policy, plaintiff's or defendant's, covered the accident. That this was such a dispute as justified plaintiff in settling for a less sum than it might have been liable for if its contention that its policy did not cover the accident were incorrect, is shown by defendant's insistence here that the policy did cover the accident. Thus defendant contends that, as plaintiff's policy was a comprehensive liability one covering the "Construction of Folsom Power Plant and appurtenant works on American River . . . and elsewhere in connection with said project" and as the truck was being loaded with pilings for the project, the policy did cover this accident. However, as we have shown, the limitation of coverage under the automobile portions of the policy limited its comprehensiveness. Nevertheless, in view of defendant's insistence that plaintiff's policy covered the accident and that defendant's did not, plaintiff's action in joining in a settlement of Borges' claim for an amount far less than it might have had to pay, if liable, and an amount which was also far less than defendant would have to pay under the clear terms of its policy, was a reasonable action, which took plaintiff out of the officious intermeddler or volunteer class. Additionally, plaintiff was under a moral obligation to protect Atkinson since Atkinson in getting insurance from both companies had attempted to get, and thought it had, sufficient coverage to be fully protected. If plaintiff had followed defendant's course of conduct, Atkinson would have been thrown on its own resources although it had paid premiums for protection. Moreover, plaintiff in making the payment acted on the invitation and at the request of Atkinson. To leave Atkinson unprotected would have injured the very valuable business relationship between Atkinson and plaintiff and likewise would have injured the insurance business generally. Also plaintiff's action helped defendant's relationship with Atkinson, for by the lower settlement amount defendant would pay in compromise, defendant's rates to Atkinson would be lower than if defendant paid out the full amount for which it was liable. Borges was badly injured. He was

demanding over $100,000. Atkinson was clearly liable for Borges' injuries. Atkinson had insured with Pacific for automobile risks, and for other than automobile risks (with exceptions) with plaintiff. Plaintiff's manager knew all this and that if the case were not settled, the verdict could have gone well over the $50,000 which Borges in settlement was willing to take. Further, there was a good chance that Pollock could have been exonerated by a jury (Pollock's crane operator was acting under the direction of Atkinson's employees) and thus Travelers' $17,500 contribution would be lost and that plaintiff, if liable and defendant not, would have to pay all of Borges' recovery except the $15,000 contributed by Travelers on behalf of McLaughlin.

The court found and the evidence supports the finding that plaintiff's manager in paying the $17,500 on behalf of Atkinson was not acting freely and voluntarily but was acting in order to protect the best interests of his company, Atkinson and defendant.

Defendant contends that *Fidelity etc. Co.* v. *Fireman's F. I. Co.* (1940), 38 Cal.App.2d 1 [100 P.2d 364], is applicable here. We do not agree. There the policies of two coinsurers provided for pro rata coverage. Fireman's refused coverage on the ground of breach of its policy by failure to give notice of loss. Fidelity, before suit filed, settled with the injured party and sought contribution from Fireman's. The reviewing court upheld a denial of recovery upon the ground that in California as well as elsewhere, where both policies contain a pro rata clause, "the insurers are to be deemed coinsurers and not cosureties, and neither can recover from the other any amount that it may have paid in excess of its *pro rata* share of the entire loss sustained by the insured." (P. 5.) The case points out, however, that "The authorities hold that, where two or more insurance companies fully insure the same risk and one company pays the total loss, that company may force contribution from the others." (P. 4.) The court went to some length to distinguish the situation in pro rata policies from that of policies of full coinsurance. Thus, this case has no application to our situation, where only one of the policies was not of the pro rata type. Moreover, we are not dealing with contribution between coinsurers, but with subrogation to the rights of the insured in favor of one who because of interest in the matter has paid the obligation of a defaulting obligor. Thus, the above mentioned case and the other cases cited by defendant dealing with contribution be-

tween excess insurers, pro rata insurers and other coinsurers do not apply.

The courts have applied the right of subrogation to one who discharges a lien on property not his own but which he mistakenly believes to be his, and have held that he is subrogated to the rights of the lienholder. (See *Stein* v. *Simpson*, 37 Cal.2d 79, 84 [230 P.2d 816], and cases there cited.) Thus, the courts have given a very liberal interpretation to the ''interest'' required to distinguish a person from being a volunteer. ■ ''It would seem that one acting in good faith in making his payment, and under a reasonable belief that it is necessary to his protection, is entitled to subrogation, even though it turns out that he had no interest to protect.'' (50 Am.Jur. p. 699, § 23.)

In *United States Guarantee Co.* v. *Liberty Mut. Ins. Co.* (1943), 244 Wis. 317 [12 N.W.2d 59, 150 A.L.R. 632], both the plaintiff and the defendant had insured the insured under pro rata policies. The defendant refused to defend an action brought against the insured by a person injured by a tractor operated by the insured. The plaintiff did defend and settled the case on the second day of the trial, paying an excess over its pro rata share as well as its share. The plaintiff then sought to recover that excess from the defendant, claiming subrogation as to the excess. The defendant set up two defenses, (1) that its policy provided that no action should lie against it unless the loss had been determined by final judgment after trial of the issues in an action against the assured or by its agreement, and (2) that the payment of the excess was voluntary. The court held that in making the payment which the defendant should have made, the plaintiff was not an interloper or volunteer, but was subrogated to the rights of the assured, saying that subrogation ''is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by one who in good conscience ought to pay it'' (p. 61), and that as to the first defense the defendant's failure to defend the assured as its policy required it to do, constituted a waiver of any right to object to the settlement. (See also *Maryland Cas. Co.* v. *Employers Mut. Liability Ins. Co.*, 112 F.Supp. 272.)

Had Atkinson itself made the settlement with Borges, there can be no question but that it would have been entitled to recover the amount paid from defendant. Equity would be performing a very poor function if by refusing under the

circumstances of this case to consider plaintiff as the subrogee of Atkinson, it permitted defendant to escape its clear liability to Atkinson.    Where, as here, a reasonable doubt exists as to his own liability to a third party, a person making a payment for that party which should have been made by a second party, cannot as to such payment be considered a volunteer or interloper.

As said in *Commercial Standard Ins. Co.* v. *American Emp. Ins. Co.*, 209 F.2d 60, where it was contended that subrogation would not lie as to the payment by one coinsurer of more than its pro rata share of a judgment against the assured on the ground that the payment of the excess was voluntary as to the other coinsurer who had refused to participate in payment of a judgment against the assured (p. 64) : "If a person has any palpable interest which will be protected by the extinguishment of the debt, he may pay the debt and be entitled to hold and enforce it just as the creditor could. *Katschor* v. *Ley*, 153 Kan. 569 [113 P.2d 127].    Payment of the debt of another under a moral obligation will support equitable subrogation; and the remedy will be applied in all cases where demanded by the dictates of equity, good conscience, and public policy. *Federal Land Bank* v. *Marvin*, 228 Ky. 242, 245 [14 S.W.2d 762, 70 A.L.R. 1392]."

In *Massachusetts Bonding & Ins. Co.* v. *Car & Gen. Ins. Corp.* (1957), 152 F. Supp. 477, 482, the court said in response to a voluntary payment defense, after stating that the defendant had refused coverage as to the action brought against the assured: "Plaintiff thus was compelled to act on the assumption, as defendant well knew, that the burden was the plaintiff's alone. In so acting the plaintiff decided, wisely, to join with Reading Company in a reasonable settlement before any suit, and to have judicially determined thereafter the truth or falsity of defendant's representation of noncoverage. Faced with this suit for such determination defendant staunchly adhered to falsity until trial and then, forced into reluctant admission of the truth, sought to turn to its own advantage its former falsity by asserting that the very payment which its own misrepresentations obliged constituted the plaintiff a volunteer. Whether the legal principles in the Murphy case, *supra*, or equitable principles of estoppel are applied, the defendant cannot now be heard to complain of the consequence of its own conduct.

"Moreover, a 'volunteer,' under the principle defendant seeks to apply, is a stranger or intermeddler who has no inter-

est to protect and is under no legal or moral obligation to pay under the circumstances. [Citations.] Under the facts we conclude that neither was the plaintiff a volunteer nor may the defendant, by reason of its own conduct, so assert. Judgment as prayed for will be entered for the plaintiff and against the defendant on submission by counsel of an appropriate order.''

''Recently, the courts have happily retreated from application of the harsh 'volunteer' rule, and have allowed recovery from the other pro rata insurer following a payment in excess of the ratable share. While not confined to such a situation, there are more compelling reasons for allowing recovery when the other insurer has not entered the case at all or has refused to defend the insured against suit by the injured party. Nevertheless, this view represents the current trend and better rule in the 'volunteer' situations.'' (38 Minn. Law Rev. 838, 850. See also *Detroit Auto Inter-I. Exch.* v. *Detroit Mut. Auto. I. Co.*, 337 Mich. 50 [59 N.W.2d 80]; *United States Fidelity & Guaranty Co.* v. *Elam*, 198 Tenn. 194 [278 S.W.2d 693].)

Travelers paid $15,000 towards the settlement under the omnibus clause of its policy with McLaughlin which covered automobiles only. This payment was not made for McLaughlin, but for Atkinson and the other persons using the McLaughlin truck in the loading operation. Borges being employed by McLaughlin could not sue the latter, but was entitled to damages from the others responsible for his injuries.

Travelers also paid $17,500 under its comprehensive policy with Pollock. Defendant contends in effect that under this policy Travelers should have paid the entire $50,000. The evidence failed to show any negligence on the part of Pollock or its employees. Moreover, the policy merely covered Pollock. It did not cover McLaughlin, the McLaughlin employee or Atkinson. The omnibus clauses of the Travelers' policy on the McLaughlin truck and defendant's policy on Atkinson for use of the hired truck covered the employees of Atkinson and Pollock. Under *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423 [296 P.2d 801, 57 A.L.R.2d 914], the liability of the negligent employees was primary and hence the policies covering the employees must be exhausted before Travelers' policy on Pollock or plaintiff's policy on Atkinson (if it had covered Atkinson) could be resorted to. This fact answers, too, the contention of defendant that as plaintiff's policy was a pro rata one and defendant's an excess one,

defendant should be, at most, only liable for the proportion of $50,000 (the amount of defendant's automobile coverage of Atkinson) to $100,000 of plaintiff's alleged coverage of Atkinson.

Defendant contends that plaintiffs before making the payment should have brought an action in declaratory relief joining all of the insurance companies involved. Such remedy, however, is not exclusive. Section 1062, Code of Civil Procedure, expressly provides that such remedy "shall not be construed as restricting any remedy, provisional or otherwise, provided by law . . ." Moreover, defendant could litigate in this proceeding any question that could be raised in a declaratory relief proceeding and could have brought into this case the other insurance companies.

Some 10 months elapsed from the time of the accident until plaintiff notified defendant of it. Defendant's policy contains a provision requiring written notices by the assured as soon as practicable after knowledge of the injury. Defendant has failed to show any prejudice from failure to receive notice prior to the 10 months' period, nor from the fact that the notice was given by plaintiff instead of by the assured. There is nothing in the evidence to show that defendant would have defended Atkinson or indemnified it even though notice had been given it by Atkinson immediately after the accident.

The purported appeal from the order denying new trial is dismissed. The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 25, 1959.